The opinion of the court was delivered by
Nicholls, C. J.
Relator averred that the citizens of the town of Lafayette, desiring to erect certain improvements, viz.: an electric light plant and system of waterworks, and availing themselves of the provisions of Art. 209 of the Constitution of the State, and Act No. 125 of the General Assembly, session of 1882, relative to the levying of taxes, did, in accordance and compliance with an ordinance passed at a session of the council, of the town of Lafayette, passed on the 24th of February, 1896; being an ordinance submitting to the people of the town of Lafayette the proposition to levy a tax for the purpose of defraying the expenses of the erection of said public improvements, did hold a special election on the 23d day of March, 1896, for that purpose, at which election it was unanimously decided to levy said tax, and that in accordance with the popular vote, the said council at session convened on the 4th of May, 1896, passed an ordinance levying said tax.
That subsequent to the levying of said tax, the mayor and council of the town of Lafayette endeavored to fund said indebtedness resultant from said taxation, by issuing bonds'redeemable with the funds arising from said tax, but being without power or authority, so to do, under the act of incorporation of the town of Lafayette, the said mayor and council petitioned the General Assembly to be empowered, and after full compliance with the law regarding the advertisement of the intention to enact local laws by special act prescribed by the Constitution, the General Assembly did at the regular session of 1896 pass an act authorizing and empowering the said mayor and council to issue bonds in the sum of thirty - eight thousand dollars, being Act No. 90 of 1896, entitled “An act to *1750 authorize and empower the city of Lafayette, Louisiana, to issue bonds for the sum of thirty-eight thousand dollars, payable not less than ten years from date thereof, to procure, construct and operate a waterworks, electric light plant; in said town, fixing the method of payment, etc., which said act was duly promulgated, as would appear by copy annexed to his petition.
That he had entered into an agreement with the mayor and council ■of the town of Lafayette, dated July 8, 1896, wherein he had bound himself to erect and construct a complete waterworks and electric light system for the use of the corporation of Lafayette, wherein it was stipulated that he was to receive as payment and compensation for the work performed the sum of thirty-six thousand dollars, said payment to be made in bonds of the town of Lafayette at par and at various intervals on the fulfilment of certain conditions, as would .appear by copy of the agreement annexed to his petition. That he had already complied in part with said agreement by posting as stipulated therein the sum of five hundred dollars as a guarantee that he would furnish within a specified time a satisfactory bond, for ten thousand dollars, and that he was ready and willing to carry out and put into effect the remaining portions of said agreement, but that Charles D. Caffery, mayor of Lafayette, refused to sign the issue of bonds authorized by Act No. 90 of 1896; that said Charles D. Caffery, mayor, at a session of the council of Lafayette, held on October 19, 1896, was instructed to sign said issue of bonds by said.council; that he, exercising his right as mayor, did veto said ordinance, giving as his reasons for so doing that, in his opinion, Act No. 90 of 1896 was in conflict with Art. 48 of the Constitution of Louisiana; that it was a •special or local law, and was an amendment to the act of incorporation of the town of Lafayette; that the said council did, then and there, by a two-thirds vote,' pass said ordinance over the veto of the mayor, but that the said mayor still persisted in his re - fusal to sign said issue of bonds, though it was his duty to do so; that if he continued to do so, the interests of relator were placed in great peril, as by his contract obligation with the said mayor and council of the town of Lafayette he is to be compensated with thirty-six thousand dollars in said bonds, and that if said issue be not signed by said mayor he would be compelled to forfeit his contract and thereby lose the sum of thirty-six thousand dollars; that a writ of man damns was necessary to compel *1751 the said mayor to sign said issue of bonds, amounting to thirty-eight thousand dollars. He prayed that the mayor be cited; that there be judgment ordering a writ of mandamus to issue directed to said mayor, commanding him to sign said issue of bonds, as it was his duty to do, under the provisions of Act No. 90 of 1896, and the act of incorporation of the town of Lafayette.
The mayor answered, admitting the facts alleged, except in so far as they might, after said admission, be qnaliñed, and for defence alleged, that he had refused to sign the bonds described in relator’s petition, because the Oity Oouncil of said town was without authority or power, under its charter and the general statutes of the State, to issue bonds for electric lights and waterworks, or for any purpose whatever.
Further answering, he averred that Act No. 90 of 1896, in effect amends the charter of the corporation of Lafayette, and moreover conferred a special right or privilege to said corporation by special or local legislation, in direct contravention of the prohibitive provisions of Art. 46 of the Constitution of the State, and the said act was therefore unconstitutional, null, void and of no effect. He prayed that it be so decreed, and that he be dismissed at relator’s costs.
The court rendered a judgment in favor of relator, decreeing" that the mandamus prayed for be made peremptory, and that Charles D. Caffery, mayor of the town of Lafayette, do sign in his official capacity the bonds of the corporation of Lafayette, known as the waterworks and electric light bonds, in accordance with the ordinance of the Oity Oouncil of the town of Lafayette passed October 19,1896.”
The court, in its opinion, recited the various facts, prior to and leading up to the ordinance of the town referred to in its judgment, and the passage of the ordinance over Che veto of the mayor, and then ■declared, that under the circumstances “ the mayor was without further reason to object to the signing of the bonds; that the act assailed (Act No. 90 of 1896) was passed at the solicitation of the mayor and council, and they could not assail its constitutionality; that the contractor, who was the sole beneficiary of these bonds, did not complain, or attack their regularity; on the contrary, he affirmed {heir legality and invoked the aid of the court to obtain possession of the bonds to which he was entitled.”
Defendant appealed.
On the 8th of July, 1896, the plaintiff entered into a written agreement with the mayor and common council of Lafayette, which was *1752 prefaced by the statement that the latter had caused certain legislation to be provided that they might contract for the erection of a complete waterworks and electric light plant system for the use of the corporation. It then went on to declare that the corporation desiring to contract with the plaintiff for the erection of the said plant, according to plans and specifications provided by the engineer for the corporation — the plant to be accepted by the engineer when completed — the plaintiff then deposited a certified check of the Metropolitan Bank of New Orleans for the sum of five hundred dollars as a guarantee that he would within thirty days give a good and satisfactory bond for the sum of ten thousand dollars, which check of five hundred dollars was to be returned to the plaintiff when the said bond had been accepted.
The plaintiff next agreed to commence work by delivery of material within ten days from the date of the agreement, and the corporation agreed to pay Ferguson (the plaintiff) the sum of thirty-six thousand dollars in payment as follows: ten thousand dollars when the hydrants, etc., were delivered to Lafayette; ten thousand dollars when balance of machinery had been delivered and the work of construction had commenced, and ten thousand dollars when the plant was completed and ready for steam, and the balance, six thousand dollars, when the plant had been operated thirty days and had been tested and accepted by the corporation’s engineer. It was declared part of the agreement that Ferguson was to accept thirty-six thousand dollars in bonds of the town of Lafayette at par value, said amount of bonds to be deposited with the president of the First National Bank as trustee, and paid to Ferguson as mentioned
On October 19, 1896, the Common Oouncil passed an ordinance entitled “ An ordinance instructing the mayor of this town to issue thirty-eight thousand dollars of bonds of the town of Lafayette, known as the Waterworks and Electric Light Bonds, under provision of Act No. 90 of 1896.”
The first section “ authorized and directed the mayor to sign in his official capacity the lithograph bonds of the said town, known as the Waterworks and Electric Light Bonds, to the amount of thirty-six thousand dollars thereof, and to deliver the thirty-six thousand dollars thereof to J. M. Ferguson, contractor of the waterworks and electric light system for and in the town of Lafayette, as provided by his bid for the contract; provided that the said J. M. Ferguson furnish the required security under said bid and exe *1753 cuted contráete” The second section ordered that the “ bonds be countersigned by the treasurer of the corporation.”
It appears from the record that the mayor vetoed the ordinance-on the ground that “ the act of the Legislature authorizing the issuing of the bonds was unconstitutional, and that such legislation was prohibited by Art. 46 of the Constitution,” but that said ordinance was adopted by a two-thirds vote of the council over the mayor’s-veto.
The act of the General Assembly referred to is Act No. 90 of 1896, entitled “ An act to authorize and empower the City Council of Lafayette, Louisiana, to issue bonds for the sum of thirty-eight thousand dollars, payable not later than ten years from the date thereof, to procure, construct and operate a waterworks and electric light plant in said town, fixing the method of payment,” etc. The-act was enacted under a preamble which recited that the property taxpayersof Lafayette, Louisiana, had, on the 23d day of March, 1898,, in accordance with the provisions of Art. 209 of the Constitution, and Act No. 126 of 1882, voted unanimously in favor of a special tax of five mills on the dollar of the assessed value of property therein annually for a period of ten years, in accordance with the proposition voted upon at said election, “ and that the notice provided for-by Art. 46 of the Constitution of the State had been published in two-newspapers at Lafayette for thirty days prior to the introduction of the act.”
By the first section of the act it was enacted by the General Assembly “ that in order to render available, and to enable the City Council to utilize the special annual tax of five mills on the dollar of the assessed value of property in said town unanimously voted by the property taxpayers thereof on March 23, 1896, for a period of ten years, for the purpose of procuring, constructing and operating a waterworks and electric light plant in said town, as contemplated by said election, and the ordinance levying said tax, providing for the collection thereof, the said City Council of Lafayette be and is hereby authorized and empowered to issue negotiable interest-bearing bonds for the sum of thirty-eight thousand dollars, payable and redeemable at such time and places and in such sums as said City Council may deem necessary and proper; provided said bonds shall be issued in denominations of not more than one thousand dollars, and not less than one hundred dollars.
The second section ordered that said, bonds should be issued at *1754 one and the same time, and of the same date, and that final payment and redemption should not exceed ten years from said date, and that the bonds should bear six per cent, per annum interest, payable annually or semi-annually, as said council might determine, which interest should be represented by coupons attached to said bonds.
The third section enacted that payment of said bonds in principal and interest should be met by the revenue derived from said special tax of five mills on the dollar of the assessed value of the property in said tqwn, and the further sum of fifteen hundred dollars annually from the general revenue of said town, being the amount heretofore expended for oil lamps therein, and also by the net revenue derived from the operation of said waterworks and electric light plant in said town, which amounts should be pledged by said council for the payment of said bonds in principal and interest.
. The fourth section enacted that the bonds and coupons should be signed by the mayor aud countersigned by the treasurer of said town, and should be sold uuder the direction and control of said City Council, provided that no bond should be sold for less than'its face value.
The town council it appears have caused to be lithographed bonds which they propose to issue under the authority of Act No. 90 of 1896.
They read as follows:
“ Six per cent. Waterworks and Electric Light Bond.
“ United States of America.
“ No.-.
“ State oe Louisiana.
“ $500. • ’ The City of Lafayette. $500.
“ Six per cent. Waterworks and Electric Light Bond.
“ Know all men by these presents, that the city of Lafayette, in the parish of Lafayette, State of Louisiana, is justly indebted for borrowed money in the sum of
FIVE HUNDRED DOLLARS,
which sum said city, for value received, hereby promises to pay in ■gold coin of the Uuited States to the bearer hereof, at the Chase National Bank, in the city of New York, State of New York, on the first day of March, -, together with interest on the same, at the rate of six per cent, per annum, which interest shall also be payable in gold coin of the United Státes, at the said bank, on the first day *1755 •of March of each year, until the payment of the principal sum, on the surrender of the several coupons hereto attached.
“ This bond is one of seventy-six bonds, all of like tenor, date and amount, and is issued for the purpose of erecting a system of waterworks and electric lights in said city, and is authorized by Act No. 90 of the Legislature of the State of Louisiana of the session of 1896, and by an ordinance of said city, a copy whereof is printed on the reverse side of this bond. The payment of all said bonds, with their interest, is secured by an annual levy of taxes, as provided, and other •special annual appropriations and revenues, as provided by said act of the Legislature of said State and ordinance of said city.
“ In testimony whereof the said city of Lafayette has caused this •bond to be signed by the mayor and treasurer of the city and to be sealed with the seal of the city, and has caused each of .said coupons to be impressed with the lithographed fac simile signatures of the mayor and treasurer, this first day of September, Anno Domini •eighteen hundred and ninety-six.

“Mayor of Lafayette, La.

“Treasurer of Lafayette, La.'’'’

(Oopy of coupon.)
■“ §30. CITY OF LAFAYETTE, $30.
“ State of Louisiana.
“Will pay to the bearer on the first day of March, 1897, Thirty Dollars, for value received, at the Chase National Bank, in the City of New York, State of New York, for interest on Waterworks and Electric Light Bond, issued September 1, 1896.
No. -
“ Chas. D. Caffery, Mayor.
“ D. V. Gardebled, Treasurer.”
Upon the reverse of the bonds are printed a copy of Act No. 90 of 1896 and a copy of what purports to be an ordinance of the City •Council of Lafayette, which reads as follows:
“An Ordinance.
“An ordinance to levy and collect a special tax of five mills on the dollar of the assessed valuation of property in the corporate limits ■of the town of Lafayette, Louisiana, annually for a period of ten *1756 years, beginning with the 1st of January, 1896; to procure, construct and operate a waterworks and electric light system in said town, as authorized by a vote of the property taxpayers of said town of Lafayette, La., at a special election held therein, on March 28, 1896, under the provisions of Art. 269 of the Oonstitution of this State and the Act 126 of the Legislature for the year 1882.
“ Section 1. Be it ordained by the City Council of Lafayette, Louisiana, in legal session convened, that for the purpose of procuring, constructing and operating a waterworks and electric light system in said town, and by authority and virtue of a unanimous vote of the property taxpayers of said town, given and cast at a special election held therein on March 23, 1896, under the provisions of Art. 209 of the Constitution of this State, and of Act 126 of the Acts of the Legislature for the year 1882, there is hereby levied and shall be collected annually for the calendar year eighteen hundred and ninety-six, and for each succeeding calendar year thereafter, for a period of ten years, a special tax of five mills on the dollar, for the assessed valuation of all property situated within the corporate limits of said town, subject to taxation under the general laws of the State.
“ Section 2. Be it further ordained, etc., that said special tax of five mills shall be extended annually for the period herein above provided on the assessment roll of said town, at the same time that the general tax is extended, and shall be collected within the same time, and as provided by Sec. 3 of Act 126 of the Acts of the Legislature for 1882, and by Act 119 of 1882, and other provisions on the same subject matter.
“ Section 3. Be it further ordained, etc., that this ordinance shall take effect from and after its passage.
“ Yeas — Blount, Doucet, Falk, Ducoté, Mouton, Le Blanc and Dr. Trahan. Nays — None.”
The District Court declined in this ease to examine into and pass upon the issues which the parties were seeking to have determined. It held that the defendant was estopped from contesting the binding force of the legislative act, under the authority of which it is alleged the bonds were to be issued. The court placed the estoppel upon the ground that the act was passed at the solicitation of che mayor and Common Council of Lafayette themselves, and therefore they could not question its validity. It was evidently both the desire and the interest of parties that the question raised should be set- *1757 tied while matters were still executory. Estoppels are not favored in law, particularly when they are sought to be brought to bear against an examination by the courts into the legality of the actions of municipal councils which involve the interests of the citizens and taxpayers of the corporation and in which the members themselves are not personally and directly concerned, and particularly when a claim is made of the absolute want of power on the part of a political body whose authority is set up to justify an act sought to be enforced to confer power to do such act. Torian vs. Shayet, 47 An. 605.
It is declared in the bill of rights: “ Courts should be open and every person for injury done him in his rights, lands, goods, person •or representation, shall have adequate remedy by due process of aw and justice administered without denial or unreasonable delay.” It requires a very clear and exceptional state of facts to cut off a right of action when judicial investigation and aid are sought to test the rights and obligations of parties when in good faith presented to a court for adjudication. The parties to this litigation do not urge an estoppel, but seek a decision. The issue has been raised by the plaintiff rather prematurely, as under the ordinance of the city directing the issuing of the bonds the mayor was authorized and directed to sign and deliver the same to the plaintiff, ‘ as provided by, his bid for the contract, provided he furnish the required security ■under said bid and executed contract with said mayor,” and there is no allegation that such security has yet been furnished. Plaintiff seems as yet to have simply deposited his cheek of five hundred dollars to guarantee that he will hereafter furnish the security required. The parties, however, have not filed any exception on this score. Touching the question of estoppel, it may be well to say, that even if the act of the General Assembly was itself not open to contest by defendant, it would be his duty, if the bonds tendered to him for signature •contained improper recitals, or varied in their terms from that act of the ordinances under which they were to be issued, to decline to sign the same. In the copy of the proposed bonds sent up we notice that they acknowledge an indebtedness to the amount therein stated as for “ money borrowed ” by the corporation, and that they are declared “payable in coin.” We are not informed as to how, or under what authority those particular recitals came to be inserted in the bonds.
*1758 Plaintiff in this court, while insisting upon the constitutional power of the General Assembly to pass Act No. 90 of 1896, urges upon us that the corporation w.as independently of that act legally authorized to issue the bonds. He says that the power of the corporation) to enter into the engagement it did for the erection of the waterworks and electric light plant had its origin back of that act; that it was based upon the power granted by Art. 209 of the Constitution, which, while placing a limitation generally upon the power of corporations to tax, yet declared that “ for the purpose of erecting and constructing public buildings, bridges and works of public improvement in parishes and municipalities the rates of taxation therein limited might be increased, when the rate of such increase and the purpose for which it was intended should have been submitted to a vote of the property taxpayers of such parish or municipality entitled to a vote under the election laws of the State, and a majority of same voting at such election shall have voted therefor, and further based upon Act No. 126 of 1882, which was passed to give-effect to that article of the Constitution. He says that the people of Lafayette had by vote authorized the levy of a special tax, starting with the premise that the - corporation was authorized to enter into the engagement it did with the plaintiff, under the authority stated. Plaintiff deduced as resulting therefrom that the corporation was not only authorized, but that it was its duty to give to the-contractor proper evidence of its obligations to him, which he might utilize for his benefit and that of the corporation, and he contends that negotiable bonds are legally such “ proper evidence.”' It might well be that corporations which have legally entered into engagements which are to be met as to payment out of special funds should be authorized from time to time to place in the hands of those with whom they have contracted-, certificates with proper recitals containing an acknowledgment that the contract having been properly performed up to a certain point a resulting right had accrued to the contractor to payment up to a-certain amount out of a special fund described in the certificate, and yet these corporations should not be authorized to deliver negotiable bonds and notes to the contractors. Breham vs. German American Bank, 144 U. S. 184; Police Jury vs. Britten, 15 Wall. 566; Smith vs. Parish of Madison, 30 An. 461; Sterling vs. West Feliciana, 26 An. 59; Bertrand vs. Vermilion, 28 An. 588; Ledds vs. Vermilion, *1759 28 An. 618; Matche vs. Police Jury of Plaquemines, 28 An. 77; Dillon Mun. Bonds, 14. The powers of political corporations in Louisiana, under constitutional limitations, are exceedingly restricted, both as to their existence and extent, and as to the method of action of the corporations in respect to them when existing. The obligations which they are authorized to contract are directed to be provided for at, or prior to, their creation by specified ways and means. The obligations incurred are not debts in the strict sense of that word— that is, they are not obligations for the full payment of which all the property of the corporation stands pledged — they are obligations predicated upon and payable out of special funds which, being exhausted, leave the holder of the obligations (unless under exceptional circumstances) without further remedy. Oorporations in Louisiana, as matters now stand, are without authority to borrow money, or to issue negotiable notes and bonds. Being without such authority, the General Assembly is without power to confer it upon any particular corporation by special act, even if it had power to confer it by general act upon all corporations. Constitution of 1879, Art. 46, pars. 12 and 13,
Act No. 90 of 1896 does not furnish a legal basis for the issuing of the bonds which defendant seeks to force the mayor to sign. The bonds of the city of New Orleans and those of the Levee Districts stand upon an exceptional basis.
Plaintiff urges us to consider the right of the corporation to issue bonds of that character under authority of Art. 209 of the Constitution and Act No. 126 of 1882. Had that been the issue which the parties were standing upon in the District Court the pleadings and evidence would have been different from what they are, but we have no objection to stating our opinion that, while the article cited and the act referred to enable corporations which have been authorized to increase their rate of taxation by having recourse to and receiving the consent thereto of the voters of the corporation to enter into engagements for special purposes than they would have been otherwise authorized to make, we find nothing therein which would authorize the corporate authorities to issue negotiable instruments. The engagements, when so authorized to be made, are still to be met by payment out of special funds.
But we understand the plaintiff to argue, that the bonds in question are not strictly negotiable instruments; that though they *1760 acknowledge a general indebtedness of the city, they none the less ■show on their face that they are payable out of a special fund, and ■that any one taking the instruments would be held to a knowledge of ■that fact, and would not be permitted to claim beyond the fund. We ‘do not feel justified in ordering the mayor of the city to sign bonds payable to bearer, for certain amounts payable in coin and which :recite that they were issued for borrowed .money. The recitals are Incorrect. The instruments are in authorized form and they may work injury even should (as plaintiff claims) the holders of the same be tied down to payment out of the special funds provided for their payment.
We notice that the bonds proposed to be issued state not only that ■“■payment is secured by an annual levy of taxes as provided, but by other special annual appropriations and revenues as provided by ■said act of the Legislature of said State and ordinance of said city.”
We are not informed of the facts upon which this recital was made.
The case, in our opinion, is before us solely on the issue made by the parties as to the legal effect of Act No. 90 of Í896. We held that act to be inoperative as conferring authority upon the city of Lafayette to issue the bonds which the plaintiff now seeks to have .signed by the mayor.
For the reasons herein assigned, it is ordered, adjudged and de-screed, that the judgment of the District Court be and the same is hereby annulled, avoided and reversed, and it is now ordered, ¡adjudged and decreed that the plaintiff’s suit be dismissed, with reservation of such rights in the premises as he may be legally entitled to.
SEPARATE OPINION.
Watkins, J.
The relator having entered into a contract with the •municipal authorities of the town of Lafayette, in this State, to construct an electric light plant and system of waterworks for the service and use of the municipality, in pursuance of a municipal ordinance authorizing the contract and providing the revenue to meet the expense of the work, demanded of the respondent the completion and fulfilment of the details of this engagement by signing and causing to be signed certain negotiable instruments representing the con-.tract. price of the work in conformity with the provisions of an *1761 enabling act of the Legislature; and this demand having been declined — notwithstanding he was specifically authorized and directed to do so by a special ordinance of the jnunicipality — on the ground that the legislative act was and is unconstitutional and void, as in conflict with and contrary to the provisions of Art. 46 of the Constitution, pars. 12 and 13, he instituted this suit by mandamus to-compel his compliance with the law, and his performance of a plain ministerial duty.
On the trial the District Judge made the writ of mandamus peremptory, and from that decree the respondent prosecutes this appeal.
The facts necessary to be stated are the following, namely:
On the 6th of July, 1896, the relator entered into a written agreement with the respondent, which is prefaced by the statement that the latter had procured the passage of a certain legislative act authorizing the municipality of Lafayette to contract for the erection of an electric light plant and system of waterworks for the use of the corporation- — -particularly specifying the details thereof and the time and manner of performing the work.
The price agreed upon was thirty-six thousand dollars — that is to-say, ten thousand dollars was agreed to be paid when the hydrants, etc., were delivered; ten thousand dollars when the remainder of the machinery had been delivered, and the work of construction commenced; ten thousand dollars when'the plant was completed and ready for application of steam, and the remaining six thousand dollars when the plant had been successfully operated for thirty days, and had been tested and accepted by the engineer of the corporation.
It was part of the agreement that the relator should accept thirty-six thousand dollars in bonds of the town of Lafayette at par value.
On the 19ch of October, 1896, the Common Council of Lafayette passed an ordinance instructing the respondent to issue thirty-six thousand dollars of bonds of the town of Lafayette, to be known and designated as the waterworks and electric light bonds, issued under and in conformity with the provisions of Act 90 of 1896 — the same being the enabling law on the faith of which the ordinance was predicated.
That ordinance provided that said thirty-six thousand dollars of bonds be issued and delivered to the relator, same to be signed by *1762 the respondent mayor and countersigned by the treasurer of the corporatiou.
It .appears that the mayor exercised his prerogative and vetoed the ordinance on the ground that the legislative act authorizing the issuance of the aforesaid bonds was and is unconstitutional, as being in contravention of Art. 46 of the Oonstitution of 1879 — the same ground that is assigned by him as respondent in his return.
The Oommon Council caused to be lithographed bonds which are of the following tenor, viz.:
" Six per cent. Waterworks and Meetrio Light Bond.
“United States of America.
“No. -.
“ State of Louisiana.
“$500. The City of Lafayette. $500.
“ Six per cent. Waterworks and Electric Light Bond.
“ Know all men by these presents, that the city of Lafayette in the parish of Lafayette, State of Louisiana, is justly indebted for borrowed money in the sum of
FIVE HUNDRED DOLLARS,
which sum said city for value received hereby promises to pay in gold coin of the United States to the bearer hereof at the Chase National Bank in the city of New York, on the first day of March, -, together with interest on the same at the rate of six per cent. per annum, which interest shall also be payable in gold coin of the United States at the said bank on the first day of March of each year until the payment of the principal sum on the surrender of the several coupons hereto attached.
“This bond is one of seventy-six bonds, all of like tenor, date and amount, and is issued for the purpose of erecting a system of waterworks and electric lights in said city, and is authorized by Act No. 90 of the Legislature of the State of Louisiana of the session of 1896, and by ordinance of said city, a copy whereof is printed on the reverse side of this bond. The payment of all said bonds, with their interest, is secured by an annual levy of taxes as provided, and other special annual appropriations and revenues, as provided by said act of the Legislature of said State and ordinance of said city.
“In testimony whereof, the said city of Lafayette has caused this bond to be signed by the mayor and treasurer of the city, and to be sealed with the seal of the city, and has caused each of said coupons *1763 to be impressed with the lithographed fac-simile signatures of the mayor and treasurer this first day of September, Anno Domini eighteen hundred and ninety-six.
“ Mayor of Lafayette, La.
“ Treasurer of Lafayette, La.”
(Copy of Coupon.)
“ $30. THE OITY OF LAFAYETTE. $30.
. “ State or LouisiaNa.
“Will pay to the bearer on the first-day of March, 1897, thirty dollars, for value received, at the Ohase National Bank in the city of New York, State of New York, for interest on waterworks and electric light bond issued September 1, 1896.
“ No.-
“Chas. D. Oaffeby, Mayor.
“ D. V. Gardbblbd, Treasurer.”
Upon the reverse of the bonds are printed a copy of Act No. 90 of 1896, and a copy of what purports to be an ordinance of the City Council of Lafayette, which' reads as follows:
“An Ordinance.
“An ordinance to levy a special tax of five mills on the dollar of the assessed valuation of property in the corporate limits of the town of Lafayette, Louisiana, annually for a period of ten years beginning with the first of January, 1896; to procure, construct and operate a waterworks and electric light system in said town, as authorized by a vote of the property taxpayers of said town of Lafayette, Louisiana, at a special meeting held therein on March 23, 1896, under the provisions of Art. 209 of the Constitution of .this State and of Act 126 of the Legislature for the year 1882.
“ Section 1. Be it ordained by the City Council of Lafayette, Louisiana, in legal session convened, that for the purpose of proeur ng, constructing and operating a waterworks and electric light system in said town, and by authority and virtue of the unanimous vote of the property taxpayers of said town, given and east at a special election held therein on March 26, 1898, under the provisions of Art. 209 of the Constitution of this State and of Act 126 of the Legis *1764 lature for the year 1882, there is hereby levied and shall be collected annually for the calendar year eighteen hundred and ninety-six, and for emh succeeding calendar year thereafter for a period of ten years, a special tax of five mills on the dollar for the assessed valuation of all property situated within the corporate limits of said town, subject to taxation under the general laws of the State.
“Section 2. Be it further ordained, etc., that said special tax of five mills shall be extended annually for the period herein above provided on the assessment roll of said town at the same time that the general tax is extended, and shall be collected within the same time and as provided by Sec. 8 of Act 126 of the acts of the Legislature for 1882 and by Act 119 of 1882 and other provisions on the subject matter.
“Section 3. Be it further ordained, etc., that this ordinance shall take effect from and after its passage.”
From a careful perusal of the foregoing ordinance it appears that-at a special election held on the 23d of March, 1896, under and in conformity with the provisions of Art. 209 of the Constitution of 1879, and in conformity with the provisions of Act 126 of 1882 of the General Assembly, there was an unanimous vote of the property taxpayers of the town of Lafayette favoring and authorizing the levy and collection of a five-mill tax upon all assessable property carried upon the assessment rolls of said town for and during a period of ten years commencing with the calendar year 1896, which tax was specially dedicated to and intended for use in the building and construction of an electric light plant and a system of waterworks in the municipality.
And it further appears therefrom that said special tax was thereby levied and required to be collected annually thereafter for and during a period of ten years consecutively, and the avails thereof were-directed to be consecrated and applied to the liquidation and payment of the expense of the construction of the aforesaid public works.
It appears from the terms and provisions of the legislative act in its title, as well as in the body of same, that it was upon the faith of the particular recitals and representations which are set forth in the aforesaid municipal agreement and ordinance, that the General Assembly were prompted to grant to the municipality the power to issue negotiable instruments, as a means of consummating the enterprise which the latter had set on foot.
*1765 Taken in this light, and examined from this standpoint, the legislative act must be considered and construed.
The title of that act is as follows, viz.:
“ To authorize and empower the Oity Council of Lafayette, Louisiana, to issue bonds for the sum of thirty-six thousand dollars, payable not less than ten years from date thereof, to procure, construct and operate a waterworks and electric light plant in said town, and fixing the method of payment,” etc.
The preamble, which precedes and prefaces th'e first section of the act, declares that “whereas, the property taxpayers of Lafayette, Louisiana, having on the 23d of March, 1896, in accordance with the provisions of Art. 209 of the Constitution and of Act 26 of 1882, voted unanimously in favor of the special tax of five mills * * * for a period of ten years, for the purpose of procuring, constructing and operating a waterworks and electric light plant i i said town; and whereas, the City Council of said town of Lafayette, having by ordinance duly levied and provided for the collecting of said special tax of five mills annually for a period of ten years, in accordance with the proposition voted upon at said election * * * be it enacted,” etc.
. This language of the title and that of the preamble make it perfectly clear that the legislative action, which was predicated thereon, had exclusive reference to the previous action of the municipality with regard to the special five-mill tax which had been authorized by a vote of the property taxpayers of the town for the purpose of making the specified works of public improvement therein, and that the full scope and purpose of the enactment was to furnish the municipality with adequate power and ample authority to carry its contract to completion by the execution of negotiable bonds, in numbers and amount to represent the instalments of the price of the work according to the terms of the contract — the provision for their payment being restricted to the avails of the tax and certain other sources of revenue which are particularly indicated in .See. 3 of the act.
This appears especially in See. 1 of the act, which declares “ that in order to render available and to enable the City Council of Lafayette to utilize the annual tax of five mills * * * unanimously "voted by the property taxpayers thereof on March 23 of 1896 for .a period of ten years, for the purpose of procuring, constructing and *1766 operating a waterworks and'electric light plant in said town as eon~ templated by said election and the ordinance levying said tax * * * the said Oity Council of Lafayette is hereby authorized and empowered to issue negotiable interest-bearing bonds for the sum of $36,000,” etc., bearing six per cent, per annum interest.
Section 4 provides that the same shall be signed by the mayor and countersigned by the treasurer of the town.
From the foregoing recitals the following propositions are clearly established, namely:
1. That there was a contract made and entered into between the relator and the Common Council of the' town of Lafayette, Louisiana, wherein it was stipulated and agreed that the former would construct and completely equip and put in operation an electric-light plant and a system of waterworks for said town for the price of thirty-six thousad dollars, and that the latter promised and agreed to pay said sum therefor.
2. That in aid of the erection and construction of said works of public improvement for the use and service of the municipality, a special tax of five mills per annum for a period of ten years was voted by the property taxpayers of said town, at an election held on the 23d of March, 1896, in pursuance- of the provisions of Art. 209-of the Constitution and Act 126 of 1882, said election having been duly ordered and held in conformity to law and an ordinance of the town.
3. That the construction of an electric light plant and a system of waterworks for the municipality are works of public improvement in the sense of that article of the Constitution; and the purpose and effect of Art. 126 of 1882 was to put in operation and make effective the provisions of Art. 209 of the Constitution.
4. That under the general law of the State, Revised Statutes of 1870, Sec. 2786, “the constituted authorities of incorporated towns and cities in this State ” have full power and authority “ to contract any debt or pecuniary liability” if they provide “ in the ordinance creating the debt the means of paying the principal and interest of the debt so contracted; ” and, consequently, having made such provision in the ordinances which the Common Council of Lafayette enacted, and by the duly authorized special tax, the municipal engagements made with the relator was of unquestioned legality.
5. That the legislative act having declared, in terms, that said *1767 bonds should be made “ payable in not less than ten years from the date thereof,” and that all should bear same date and be issued atone and the same time, they constituted one series; and that the legal effect of these provisions is, to enable the municipality to levy and collect the special tax, as well as other revenues which are specially dedicated to their payment by section four of the enabling statute, and preserve the fund thus raised until the time of their payment shall arrive.
Manifestly it was upon this hypothesis that the General Assembly enacted the enabling law.
It must be apparent, then, that the statute did not confer upon the municipality any power to contract which it did not possess under the general law existing at the time. It did not authorize it to raise any revenue for the purposes proposed, as that had been already exercised under the authority of Art. 209 of the Constitution and act of 1882. It did not purport to amend, renew, extend, or explain the charter of the town of Lafayette, or to grant to it any special or exclusive right, privilege or immunity, within the sense of Art. 46 of the Constitution; as certainly, no such language is employed in the act, and that employed is of an exactly opposite import.
It deals directly and immediately with the previously existing contract between the relator and the town of Lafayette, with reference to the erection of the aforesaid works of public improvement; and enlarges the power of the municipality in the only respect of relieving it of its disability and authorizing it to execute and issue negotiable interest-bearing bonds — it not being authorized to do so under the general law of the State.
In this view of the matter, the statute is plainly constitutional; and even if that were a doubtful question, courts are bound to lean rather toward a construction that will sustain the constitutionality of a statute than to one that will declare it void as in contravention of the Constitution.
A fair illustration may be found of the purpose and object which were to be attained by the aforesaid enabling law, in some of the adjudications of this court on this and similar questions.
For instance, in Snelling vs. Joffrion, President of the Police Jury, 42 An. 886, the plaintiffs sought the annulment of a police jury ordinance and contract authorizing the building of a bridge, the price of which was twenty-seven thousand three hundred dollars, *1768 divided into ten equal annual instalments, to be evidenced by promissory notes payable to the order of the contractor, and in the course of our opinion we said: “The police juries have the undoubted authority to construct bridges and repair the same, and to open roads and keep same in order. But they have no power to contract an indebtedness for this purpose in advance, and to issue promissory notes or warrants to cover funds which may be set aside for this '.purpose in future taxation without express authority from the supreme political power of the State.’’ (Our italics.)
$ jfc }(s 5}s sj:
“ W e do not mean to say that police juries ean not contract for improvements which they are authorized to make, to be paid out of the taxes which they are authorized to levy for parochial expeuses, and which are set apart for this special improvement; but they can not issue any promissory note, draft or warrant in advance to cover this amount, which may go into the treasury. It must be there before the warrant issues, unless by legislative authority they are authorized to issue same in advance. * * * We are referred to the case of New Orleans Gaslight Company vs. City of New Orleans, 42 An. 188 (but) the contract to light the city was made under legislative authority granted in Sec. 7 of the city charter.” Sec. 7, Act 20 of 1882. (Our italics.)
In Sterling vs. Parish of West Feliciana, 26 An. 59, it was said by our predecessors:
“ It has been frequently determined that police juries are political corporations whose powers are specially determined by the Legislature, and that they can legally exercise no other powers than those delegated to them. They are specially required by statute when, within the scope of their legitimate powers, they create a debt against the parish, to provide in the same act the means of paying it. For all purposes for which they are by law authorized to create debts they are authorized to levy and collect a tax for paying them. But without a special grant of power by the Legislature for that purpose, they clearly have no authority to issue and to put in circulation negotiable instruments of any kind. No special statute is shown in this case conferring upon the parish of West Feliciana the authority to issue the negotiable notes or warrants upon which the plaintiff sues in this case.” (Our italics.)
The foregoing principles were sanctioned and approved in Rail *1769 road Company vs. Police Jury, 48 An. 331, it being a suit for the annulment of a contract the defendant had made for the construction of a court house, the payments for which were to be made in instalments, and our opinion said:
“ So long as the parish keep within (the ten mill) limit, for the building of useful and necessary public buildings, there is no law prohibiting them from setting apart a portion of the ten-mill tax in ¡future years.”
In New Orleans Gaslight Company vs. City of New Orleans, 42 An. 188, cited supra, plaintiff sought to annul a contract the defendant had made with the Louisiana Electric Light and Power Company, on the ground that same was in contravention of Revised Statutes, Sec. 2488 (above quoted; and because it had not the power to make it, and our opinion said:
“ The rule established by jurisprudence seems go be, that in the absence of any .special legislative prohibition or restriction, a municipal corporation, vested with a general power to make a contract for the supply of gas or any other commodity, has the right to make it according to its own discretion as to its prudence or good policy within the limits of its franchise, including the power to' make it for more than one year, if by thus contracting it believes ■that better terms, or lower rates can be obtained.”
All the questions discussed in this case, and particularly that of the nnconstitutionality of the legislative enabling act, were fully met and disposed of in Conery vs. Waterworks Company, 41 An., and in Nicholls, Governor, vs. Shakspeare, Mayor, 41 An. 156; and in the latter case we said: “ The unconstitutionality of a law is not to be implied. The court, if . possible, will give effect to the statute unless it is clearly unconstitutional.”
But the statute, as before observed, was only intended to remove the existing legal impediment which existed to the right of the municipality to issue and put in circulation interest-bearing bonds, and to .grant her the special authority to do so. And this was done in this instance in the most plenary manner. It has the sanction of the highest authorities. 1st Randolph on Com. Ins., p. 488, Sec. 343; 1st Dillon’s Munic. Corp., Secs. 372, 381, 410, 416; Knox County vs. Aspinwall, 21 Howard, 539; Otis vs. Cullom, 92 U. S. 447; Orleans vs. Platt, 99 U. S. 676; Ætna Life Insurance Co. vs. Middleport, 124 U. S. 545; Cook vs. United States, 91 U. S. 389; United States vs. *1770 Bank of Metropolis, 15 Peters, 377; Floyd Acceptances, 7 Wallace, 666; Murray vs. Charleston, 96 U. S. 432; Vermyle & Co. vs. Adams Express Co., 21 Wallace, 138; Louisiana vs. Jumel, 107 U. S. 711.
In all those cases and in many others the'question of the right to issue and put in circulation interest-bearing, negotiable instruments —whether government, State or municipal — depends solely and alone upon a proper and efficient grant of sovereign power, and that being satisfactorily shown any and all such instruments possess all the indicia of legality and bona ftdes which attach to similar instruments issued by any private individual, subject alone to such restrictions as are carried in either their recitals or may be exhibited by the-endorsements which appear upon the back of them, subject always to the claim that the legislative grant of authority was without constitutional efficacy.
In Munson vs Board of Levee Commissioners of Atchafalaya Basin Levee District, 45 An. 15, the plaintiffs attacked the provisions of Act 97 of 1890, under which acreage, or produce taxes were authorized to be levied and certain negotiable bonds were authorized to be issued, on the ground that same was unconstitutional and void, because of its being in conflict with and in contravention of Art. 214 of the Constitution and the amendment thereof — the amendment being of similar purport as that of Art. 209 of the Constitution, vide supra.
Among the stipulations of the act it is provided :
“ That for the purpose of raising further funds for said district said Board of Commissioners are hereby authorized and empowered to issue bonds to the amount of one million dollars, in such sums and denominations as the said board may prescribe, not less than one hundred dollars each; said bonds shall be drawn payable to bearer, shall be signed by the president of the board officiallyjand attested by the signature of the secretary, etc. * * * and shall each have printed on the back the following, viz.: This bond, principal and interest, secured by taxation,” etc. Id., Sec. 12.
It further provides “that all of said bonds are to become due in twenty years and payable in ten years, at the option of the Board of Levee Commissioners.”
The following section declares “ that said board shall have the *1771 right to negotiate said bonds at a rate of discount not to exceed ten per centum,” etc. Id., Sec. 13.
The following section provides for the payment of interest “out of funds arising from the collection of the said levee tax,” for which provision is made in the act; and the next succeeding section provides “ that after ten years from the execution of the said bonds any excess of said ten mills district tax, after paying accruing interest on said bonds, shall constitute a sinking fund, and shall not be drawn out of the State Treasury for any other purpose than to pay the principal of said bonds,” etc. Id., Secs. 14 and 15.
The foregoing provisions of this act are very similar to those of Act No. 90 of 1896, vide supra.
In that ease — Munson vs. Board of Commissioners of the Atchafalaya Basin Levee District—the plaintiffs’ contention was that the above quoted provision of the act—Act No. 97 of 1890 — is unconstitutional on the ground that there is no warrant in the Constitution for the authority granted to the levee commissioners to issue bonds, specifying and particularizing various grounds in detail.
The opinion enters into a discussion of these questions in extenso,. and concludes with the following very pertinent and just observation, viz.:
“The General Assembly,in all likelihood, found it necessary and deemed it expedient to provide means whereby money could be raised and placed in the hands of the levee commissioners, so that levee construction might not be hindered and delayed by delinquent tax collections. Of this question it was a competent judge. What other expedient could have been resorted to than that of authorizing the commissioners to issue and hypothecate district levee bonds? For this purpose the Legislature was capacitated to provide.”
Alter a further brief statement the court stated its conclusion to be as follows:
“ They are not bonds of the State. We are of opinion that the bonds under consideration are of unquestionable validity, and that the Legislature had constitutional authority for its enactment.”
Our decision in the Munson case followed quite a similar decision of this court, in Planting and Manufacturing Company vs. Tax Collector, 39 An. 455, in which we said:
“ The bonds authorized to be issued by the corporation are issued for its own exclusive purposes.”
*1772 These decisions have remained in full force and operation since; and they have been acted upon by levee commissioners in other districts of the State, by whom, within the judicial cognizance of this court, a vast amount of similar negotiable instruments have been put upon the markets of the world.
Supposedly, it is upon the authority of these decisions, and the •legislative acts which they interpret, that the General Assembly of 1896 enacted the enabling statute under consideration, believing they possessed constitutional authority to do so; and, in our opinion, we think they were correct in this supposition, and that the act in question is constitutional and valid.
But, we are of opinion that the Common Council of Lafayette exceeded its authority under the statute in two respects with regard to the preparation of the bonds which they proposed and tendered for the signature of the mayor (1) in stating in the face of the bonds that they were for borrowed money, whereas the recitals of the legislative act and the ordinance authorizing their issuance show the contrary, and (2) in making them payable in gold coin, whereas there is no corresponding recital or requirement in either the aforesaid ordinance or law.
It is not our view, however, if freed from those difficulties, that the bonds in question would possess all the qualities of ordinary commercial instruments, notwithstanding they are negotiable in form. They are, necessarily, subordinated to the law and ordinances of the Common Council of Lafayette, under the authority of which they are ■issued and which they carry as an endorsement upon them, the purpose and object of which were doubtless to convey to those to whom •they may be assigned, full knowledge of the methods and means of payment to which they must be relegated, and that the municipality iis not bound absolutely and at all events.
Mu. Justice Miller concurs in the decree only, and that concurrence is only as to the form of the bond.
Mu. Justice Blanchard, not having been a member of the court at the time the cause was argued and submitted, takes no part in this (opinion.