### No. 8513.

### S. G. LAYCOCK vs. THE CITY OF BATON ROUGE.

#### THE SAME vs. THE SAME.

#### THE SAME vs. THE SAME.

#### CONSOLIDATED.

The debt sued for in this case being for the current expenses of the Municipal Corporation, and payable out of the current revenues of the several years in which it was contracted, does not fall within the restrictive operation of Section 2448 of the Revised Statutes.

APPEAL from the Seventeenth District Court, Parish of East Baton Rouge. *Sherburne, J.*

*Herron & Beale* for Plaintiff and Appellee.
*David N. Barrow* on the same side.
*Read & Goodale* for Defendant and Appellant.

The opinion of the Court was delivered by

BERMUDEZ, C. J. The plaintiff seeks to hold the City of Baton Rouge liable for a supply of gas during stated periods.

To this end he instituted three suits: one in the name of the stock-holders of the Gas Co., (of whom he was one) as holders of warrants issued by the City for the gas supplied, and two others, in his own name, also as warrant holder.

After an exception to the first suit, requiring the disclosure of the names of the stockholders which he claimed to represent, the plaintiff filed a supplemental petition, alleging himself the owner of the warrants sued upon.

Subsequently, the defendant asked that the cases be cumulated, and upon it being thus ordered, the City filed a general denial, specially charging absence of ownership in plaintiff and of liability on the part of the corporation. The further defense of prescription was set up.

From an adverse judgment the City appeals. We deem it unnecessary to pass upon the preliminary defenses, and will determine the controversy from a different standpoint on the merits of the suit.

It is clear that the plaintiff seeks payment of a debt averred to have been created by the City of Baton Rouge. As it is not a claim *ex delicto*, it is necessarily one *ex contractu*. Under the features presented, a contract and a *quasi* contract would have to stand on the same bottom.

The question involved and to be decided is purely one of power on the part of the corporation to contract and to incur an obligation on the one hand, and of the cancellation of a right claimed to have been acquired by plaintiff's assignors-and transmitted to him.

Dillon, in his work on Municipal Corporation, expressive of the essence of the jurisprudence on the principles by which the liability of those juridical persons are to be tested, tersely says:

" In determining the extent of the power of a municipal corporation to make contracts and in ascertaining *the mode* in which the power is to be exercised, the importance of a careful study of the charter or incorporating act and the general legislation of the State on the subject, if there be any, cannot be too strongly emphasized. Where there are special provisions on the subject, these will, of course, measure, as far as they extend, the authority of the corporation.    *    *    *

" It is a general and fundamental principle of law, that *all* persons contracting with a municipal corporation must, *at their peril*, inquire *into the power* of the corporation or its officers, and a contract, beyond the scope of the corporate power is void, although it be under the seal of the corporation.

" Respecting the *mode* in which contracts by corporations should be made, it is important to observe that, when the *mode* of contracting is specially and plainly prescribed and limited, that mode is exclusive

and must be pursued, or the contract will not bind the corporation." §§ 371, 372, 373, and authorities cited.

Speaking on this subject of corporations, C. J. Marshall said: " The act of incorporation is to them an enabling act.   It gives them all the powers they possess.   It enables them to contract, and when it prescribes to them a mode of contracting they must observe that mode, or the instrument no more creates a contract than if the body had never been incorporated." 2 Cranch U. S. 127.

Cooley on Const. Lim., Sec. 196, p. 237, 4th ed.; says: " It must follow that if, in any case, a party assumes to deal with a corporation on the supposition that it possesses power which it does not, or to contract in any other manner than is permitted by the charter, he will not be allowed, notwithstanding he may have complied with the undertaking on his part, to maintain a suit against the corporation, based upon its unauthorized action."   Vide Green's Ultra Vires, p. 42.

" It results from this doctrine, that unauthorized contracts are void, and in actions thereon the corporation may successfully interpose the plea of *ultra vires*, setting up as a defense its own want of power under its charter or constituent statute to enter into the contract." Dillon, § 381.

" The doctrine of implied municipal liability," says Mr. Chief Justice Field, in a case where the subject underwent thorough examination, " applies to cases where money or other property of a party is received under such circumstances, that the general law, independent of express contract, imposes the obligation upon the city to do justice with respect to the same.   *   *   *   As a general rule, a city corporation is only liable upon express contracts, authorized by ordinance (or other due corporate proceedings).   The exceptions relate to liabilities from the use of money or other property which does not belong to her, or to liabilities springing from the neglect of duties imposed by her charter, from which injuries to parties are produced." Argenti vs. San Francisco, 16 Cal., 255, 282.

It may well be, however, that sometimes an ordinance may not be indispensable.   For instance, it has been held that a city is liable for gas furnished to it with knowledge of the council, though no ordinance or resolution was passed authorizing it to be furnished.  8 Cal. 453, 466 ; but in this State the law prohibits, *in negative terms*, municipal organizations, police juries and the constituted authorities of incorporated towns and cities from contracting any debt or *pecuniary liability*, without adopting an ordinance to create the debt, and providing *in it* the means of paying the principal and interest of the debt so contracted. Act 263 of 1855 ; R. S. 2448; Charter of Baton Rouge, 114, 1874, Sec. 26.

In a number of instances, in which parties claiming to be creditors of municipal corporations, in the absence of a compliance with the requirements of this prohibitory and mandatory law, the Courts have uniformly exonerated the corporations. 12 An. 496; 15 An. 667; 23 An. 192, 232, 251; 24 An. 457; 26 An. 59; 27 An. 319; 28 An. 343; 29 An. 590, 673; 30 An. 40, 152, 461; 32 An. 180; 33 An. 386.

In the case of Talbot vs. Parish of Iberville, 24 An. 135, the Court however recognized the liability of an involved corporation for the payment of the fees of attorneys employed to relieve it from embarrassment, for which an appropriation appears to have been subsequently made in the budget of receipts and expenditures. The Court thought such to be *contingent* expenses, which did not fall within the prohibition of the law, and which had to be incurred *ex necessitate*.

The case also relied upon in 13 An. 430, was a writ against the City of Shreveport for damages said to have been sustained in consequence of work done under an ordinance for the grading of a street, which ordinance, it was claimed, the city had no right to pass and execute, because it was violative of the Act of 1855, in not observing its requirements. It was an action *ex delicto* for a *quasi* offense, not one, therefore, to draw money in satisfaction of a debt contracted, without adopting an ordinance and providing for payment. It was in order to repel a charge of trespass against the city, that the language referred to, which is argumentative and *obiter*, was used. The Court was, nevertheless, careful in distinctly stating that the ordinance created no specific debt, thus differentiating the action under consideration from one *ex contractu*.

The principles recognized in the authorities to which plaintiff's learned counsel have invited our attention are indisputable, but they have no application to a case where a prohibitory law has been violated. Some of them expressly recognize the distinction, those in 15 Wall. 570 and 96 U. S. 258, particularly.

In the present instance, no ordinance was passed and no provision was made for the payment of the gas to be supplied.

It was beyond the power of the corporation to have incurred obligations and conferred rights otherwise than by a rigid observance of the *mode* requiring the fulfilment of essential conditions precedent. Whatever may have been subsequently done cannot have the effect of infusing life into that which was lifeless *in embryo*. An act *ultra vires* is not susceptible of ratification by the disabled corporation.

If subsequent acts, however formal they might be, could be successfully opposed and urged as supplying original fatal deficiencies, the prohibition would be a dead letter on the statute book, and corpora-

tions, which have only *jura minorum*, could validly do indirectly that which they cannot legally do directly.

The jurisprudence of this State, based on recognized principles and in accord with that of our sister States, has invariably proclaimed that the restraints placed upon municipal corporations, for the public good, were legitimate and had to be respected.

The view which we have taken of this case dispenses us from passing expressly on the plea of prescription.

The judgment of the lower court is erroneous. It is, therefore, ordered and decreed that the judgment appealed from be reversed, and that there be judgment in favor of defendant, rejecting plaintiff's demand with cost of both Courts.

---

## ON REHEARING.

FENNER, J. We granted this rehearing because satisfied, on a reconsideration of the case, that the debt herein sued for, being for ordinary current expenses of the corporation, and payable out of the current revenues of the several years in which it was contracted, does not fall within the operation of Section 2448 Revised Statutes.

Judge Dillon, in treating of this precise question, says: "An Act of the legislature prohibiting counties and cities from thereafter 'contracting any debt or pecuniary liability without fully providing, in the ordinance creating the debt, the means of paying the principal and interest of the debt so contracted,' does not extend to ordinary street work, which forms part of the current expenses of the corporation, and which may be paid out of its current revenues." 1 Dillon, Mun. Corp., Sec. 88.

This Court, referring to the very statute now under consideration, long since held, that "ordinances directing work to be done upon streets and not involving the giving out of obligations beyond what the current revenues of the town may meet, do not seem to us to be within the meaning of the prohibitory law relied upon. Reynolds vs. Shreveport, 13 An. 430.

Consideration of the methods and necessities of municipal administration must enforce the correctness of these views.

The very language of the prohibition, requiring provision " for paying the *principal and interest* of the debt so contracted," obviously suggests reference to debts not covered by the ordinary annual appropriation of current revenues and expected to be paid out of the same, but which are to be paid in the future, or which, at least, from their nature would not, in ordinary course of financial administration, be paid without special provision therefor. Inasmuch as special provision must, at some time, be made, the law requires that to be done at the

moment of creation of the debt. As we said in a former case, " its motive was to restrain municipal extravagance by requiring corporate officials, at the moment of contracting debt, to contemplate the necessity of providing for its payment, and, by requiring such actual provision, to keep the taxpayers advised of the burdens to which they were being subjected by their official agents, so that they might hold them responsible therefor." Oubre vs. Donaldsonville, 33 An. 389.

These considerations have no application to ordinary and necessary administrative expenses, payable, and expected to be paid, out of the ordinary current revenues.

Municipal corporations ordinarily adopt an annual estimate of receipts and expenditures. The estimate of expenditures usually appropriates the anticipated revenues to the various branches of administrative expenses in certain proportions or fixed amounts. There are officers to whom are entrusted these several branches of administration and who conduct the same, subject to the general supervision of the corporate council.

Take, for example, the ordinary appropriation for " streets and landings." One of the obvious purposes would be to keep the streets and landings in order and repair. This requires the employment of laborers. Every employment of a laborer necessarily involves the obligation to pay him, and thus the creation of a debt. Would any one suppose that, in every such case, an ordinance would be required making provision for its payment? Naturally, these laborers look for their payment to the current revenues raised for and devoted to the general administrative purpose.

Now, in the case at bar, the record establishes that, in every year except one, the council of defendant adopted a general estimate of receipts and expenditures. In the latter was included a large item for " streets and landings." The evidence is clear that this was intended to include, and did include, the expense of lighting the streets, landings and public places generally. The Gaslight Company, the assignor of plaintiff, was regularly employed to do such lighting, and actually did the same. Its accounts were presented, at brief intervals, during the several years, and were duly audited and approved, and warrants were drawn by the auditing officer upon the proper disbursing officer, for the amounts of the various bills specially drawn against the " streets and landings" appropriation. Many of these warrants were paid, but, in each of the several years some of them remained unpaid, owing to the deficiencies of receipts, and the latter form the basis of the present suits. These warrants have been repeatedly recognized by the city authorities in various ways, and several funding ordinances have been passed for their liquidation, and they have been admitted

to registry under the provisions thereof, and sundry payments on account have been made in order of registry.

There is no dispute about the rendition of the service and the correctness and propriety of the charges therefor. The only dispute, on the merits, is as to the validity of the debt, on the ground of non-compliance with the prohibitory law referred to. The authorities quoted and the views hereinbefore expressed satisfy us that the law does not apply to a debt of this character.

⸱ We attach no importance to the absence of proof of adoption of any estimate of receipts and expenditures for the year 1872. The evidence does not affirmatively establish that no such estimate was adopted; but, if it were otherwise, it is shown that the revenues were, in fact, collected and appropriated to administrative purposes, as in other years, and the warrants drawn for payment of the Gas Company were, as usual, drawn on the "Streets and Landings" fund.

They were ordinary administrative expenses payable out of current revenues.

The case of Taxpayers vs. New Orleans, 33 An. 568, has no application. There existed no provision of law or Constitution applicable to defendant, striking with nullity indebtedness otherwise validly contracted, because the revenues out of which it was expected to be paid proved insufficient or was otherwise used.

The warrants herein sued on as evidence of the debt are proper and legal vouchers for the debts represented thereby, which the municipal corporation was competent to issue, and the issuance of which was, indeed, the lawful and customary mode of auditing and liquidating municipal indebtedness. They do not fall within the principle of various cases quoted annulling warrants issued by police juries for purposes of circulation, or to raise money, etc.

We discover no force in the objection that the plaintiff, as assignee of the warrants, does not thereby become owner of the indebtedness represented thereby.

. The exception to the amended petition filed by plaintiff in the first of these suits, wherein he alleged that, since the filing of his original petition in which he sued for the use of certain third persons, he had acquired the ownership of the claim, and, therefore, asked that he be individually substituted as plaintiff, is disposed of by the authority of Payne vs. Furlong, 29 An. 160.

This amendment, being legal, eviscerated the entire substance of the exceptions which defendant had filed to the original petition, and left him nothing to complain of.

The various funding acts of the city heretofore referred to, the ad-

mission to registry thereunder of these warrants, as valid obligations, and the payments made on them at various times, conclusively rebut the defense of prescription.

It is, therefore, ordered that our former decree herein be annulled and set aside. And it is now ordered that the judgment appealed from be affirmed at appellant's cost.

---

### DISSENTING OPINION.

BERMUDEZ, C. J. Supplying the City of Baton Rouge with light was a matter which should have formed the object of a contract. The record shows that, anterior to the date of the first supply, there had been such contract with the City. The charter is to the effect that all contracts for public works or for materials or supplies, when the same exceeds two hundred dollars, shall be given after certain formalities, which were not observed in this case. It is notorious, that the City of New Orleans enters into contracts for the lighting of her streets, whether by gas or oil.

The quotation from Judge Dillon rests upon a solitary decision, which is from this State, and which is referred to *in supra* in the opinion just read, to reinforce the text-writer. That decision was rendered in a case in which the claim made for work done on the streets was allowed, because it formed part of the *current* expenses of the town and did not involve the necessity of giving out obligations beyond what the current expenses of the town may meet. 13 An. 430. No one disputes the correctness of this authority.

That which is denied, is that the lighting for which payment is now asked, was a current expense, which the current revenues of the City of Baton Rouge could meet.

In the absence of evidence showing that a contract had been entered into and provision made, as required by the charter, for payment of the supply, it was incumbent upon plaintiff as a condition precedent, *sine qua non*, to have shown that the current revenues of the town could have met that and its other expenditures likewise incurred. This has not been shown.

Emancipate municipal corporations from the legal exigencies and restraints which require that, before they can become liable for a debt, they must conform with certain formalities and provide for its payment, and all the barriers raised by law to prevent them from running into extravagance, spoliation and ruin, are at once destroyed.

I, therefore, dissent from the opinion of the majority and adhere to that originally pronounced.

---

MANNING, J. I concur with the Chief Justice.