(34 South. 921.)

No. 14,731.

### BLANKS v. CITY OF MONROE.*

(June 8, 1903.)

MUNICIPAL CORPORATIONS—CONTRACTS—VALIDITY—TAXATION—LIGHT AND WATER.

1. Contracts whereby municipal corporations make provision in advance for such prime necessities as light and water, and incur obligations therefor, to be met from time to time (as those necessities are furnished) from current revenues, do not fall within the restrictive operation of R. S. 1876, § 2448, which prohibits such corporations from contracting debts, without providing, in the ordinances by which they are contracted, for their payment.

2. So far as shown in this case, there is no special statutory limitation upon the power of the city of Monroe, with respect to the making of contracts for light and water, which renders necessary a stipulation for or the voting of a special tax, and the fact that such tax was agreed on and voted, for 10 years, in aid of contracts extending over a period of nearly 30 years, does not of itself affect the validity of such contracts quoad the period beyond which the tax was levied, nor does the language of the contracts which are here sued on require such an interpretation. To the extent that the tax is inadequate for that purpose, the obligations of the city must be met in some other way.

(Syllabus by the Court.)

Appeal from Sixth Judicial District Court, Parish of Ouachita; Luther Egbert Hall, Judge.

Action by R. B. Blanks, receiver of the Monroe Waterworks & Light Company, against the city of Monroe. Judgment for defendant, and plaintiff appeals. Modified.

Andrew Augustus Gunby and E. Tyler Lamkin, for appellant. Stubbs & Russell, for appellee.

### Statement of the Case.

MONROE, J. Upon March 26, 1902, the plaintiff, as receiver of the Monroe Waterworks & Light Company, instituted this suit, claiming from the city of Monroe the sum of $4,743.35 as a balance due for water and light furnished under contracts by said company prior to January 1, 1902, after deducting all credits to which the city was entitled up to the date of the filing of the suit. In September of the same year he filed a supplemental petition,

---

*Rehearing denied June 30, 1903.

in which he alleges that, under the direction of the district court, he has continued, and is continuing, to furnish water and light to the defendant, agreeably to the terms of the contracts referred to; that a further sum of $3,200 fell due therefor on July 1, 1902, but that nothing has been paid; and that the city council has adopted a budget for the year in which there is no provision for payment. He prays for judgment for $7,943.35, as the amount due prior to July 1st, and for $533.33⅓ per month for each month subsequent to that date during which water and light may be furnished, and that the mayor and council be directed to provide therefor in the budget of 1902, and to levy a special tax of 3½ mills to pay the same, or else to pay it out of the general fund.

The defendant admits that contracts were entered into whereby the company was to furnish, and the city to take, water and light, but avers that it was therein provided that payment should be made by the city from the proceeds of a special tax of 3½ mills, to be imposed for 10 years, and that an election was held and the tax imposed for 10 years, and during that period collected and paid to the company; and that the defendant has thereby exhausted its power with respect to such tax, and the company has exhausted its rights under said contracts, and has no right to demand payment from any other fund, said contracts being absolutely null with respect to the period (of 20 years) covered by them in excess of that for which said special tax to meet their requirements was authorized and levied.

Defendant further alleges that the company did not begin to furnish water and light until August 4, 1893, and, having received the tax levied during 10 years, is obliged, under its contracts, to continue the service until August 4, 1903, and that there is to be deducted from the amount otherwise due for that period the sum of $835.86 for failure in said service. The prayer is that the demand of the plaintiff be rejected; that he be directed to furnish water and light to respondent, in compliance with the contracts referred to, until August 4, 1903; and that said contracts be decreed to be of no effect after that date.

The case having been tried upon the issues as thus made up, there was judgment for the plaintiff in the sum of $1,684.95, as

the balance of the special tax collected by the city and not paid over, with reservation of plaintiff's rights with respect to any further amounts that may be realized from the special tax on the delinquent roll for 1902, and his demands were otherwise rejected. It was also decreed that the city was and is entitled to the existing light service until February 2, and to the water service until August 4, 1903, without further payment save as provided by said judgment, the question of the validity vel non of the contracts for the balance of the term covered by them being reserved. From this judgment the plaintiff alone has appealed, and the defendant asks no amendment.

The facts disclosed by the record are as follows:

Upon February 22, 1892, the Monroe city council adopted Ordinance No. 703, entitled "An ordinance to provide for a system of water works and electric lights, both arc and incandescent, in and for the city of Monroe, Louisiana," whereby W. A. Bright and F. P. Gravely, their associates and assigns, were authorized to construct the system referred to in the title in the streets, alleys, etc., of Monroe, and to maintain the same for 30 years, or until purchased by the city. The following excerpts from the different sections of this ordinance and of other ordinances will be sufficient for present purposes:

"Sec. 3. * * * The city hereby agrees to rent, for the term of this ordinance, 70 double discharge fire hydrants at an annual rental of $40 each and 25 arc lights, at an annual rental of $90, each, payable semi-annually, in cash; said fire hydrants and arc lights to be located at such points and places as may be designated by the city council. * * *

"Sec. 4. To provide for hydrants' rental and electric lights, as specified in section 3 * * *, the city shall levy and collect, annually, a special tax of 3½ mills, or as much thereof as may be necessary, to be known as the 'Fire Hydrant and Electric Light Tax,' said tax to be voted at a special election, to be ordered by the council, and a sufficient amount, so collected from said tax, shall be set aside for paying said hydrants' rental and for electric lights, and shall not be used or appropriated for any other purpose whatsoever. * * *"

"Sec. 6. The water works, when completed,

shall be subjected to a test, which shall consist * * *, and, upon that test being made, the city shall be obligated and bound for the hydrants' rental as provided in section 3, etc. * * *

"Sec. 7. The city may rent additional hydrants for the unexpired term of this ordinance at the rate of $40 each, per annum, etc. * * *

"Sec. 8. The city shall have the right to purchase its water works and electric light plant at the expiration of ten years, or every five years thereafter, at an appraised valuation, etc. * * *

"Sec. 9. This ordinance shall be a contract between W. A. Bright and F. P. Gravely, their associates, heirs, or assigns and the city of Monroe, Louisiana, provided, said W. A. Bright and F. P. Gravely * * * shall commence work within three months from the time the 3½ mill tax has been voted and promulgated and have the works completed within nine months after said works shall have been so commenced."

Section 10 provides that Bright and Gravely shall give bond for the faithful performance of their obligations.

Ordinance 711, adopted May 20, 1892, in the preamble recites the enactment of Ordinance 703, and the conditions upon which it was enacted. It further recites that at an election held May 2, 1892, the special tax contemplated by that ordinance was voted; that the result was duly promulgated; and that Bright and Gravely have given the bond required; and it declares said Ordinance 703 to be a contract binding on all parties.

Ordinance 732, adopted November 23, 1892, authorizes certain changes in the specifications for the establishment of the waterworks plant, and provides that, whenever the mains are extended as contemplated by section 8 of Ordinance 703, the city shall place a hydrant for each 400 feet of such extension, and pay for the same at the rate agreed on for the others.

Ordinance 742, adopted March 6, 1893, extends the time for the completion of the waterworks to August 1, 1893.

Ordinance 746, adopted April 3, 1893, purports to be a contract whereby the company agrees to furnish 10 arc lights in addition to those then in use, and the city agrees to pay for the same at the rate of $90 each per annum, beginning January 1, 1894, and further agrees "to use said extra lights for the full term and period of the unexpired term of the contract for lights," as evidenced by Ordinance 703.

Ordinance 763, adopted August 4, 1893, recites that the test of the waterworks plant has been made and has proved satisfactory, and specifically binds the city to pay $40 each for 70 hydrants from "the 4th day of August, 1893 * * * for the full time published in said Ordinance No. 703."

The electric light service, with 25 lights, as originally contracted for, began February 2, 1893, and the 10 additional lights called for by Ordinance 746 were supplied January 1, 1894. The water service, with the 70 hydrants, as called for by Ordinances 703 and 763, began August 4, 1893, as provided in the ordinance last mentioned. It is not shown that the city contracted for any other lights or hydrants than those thus mentioned.

It appears from the evidence that, including the payments made after the filing of this suit, but prior to July 1, 1902, the city has paid to the company, for lights and water, a total of $53,629.91, whereas, upon the basis of the contracts as established by the record, its account should be debited up to July 1, 1902, as follows:

25 lights, at $90 each, per annum, from February 2, 1893, to July 1, 1902, 9 years and 5 months (less 1 day).................. $21,181 50

10 lights, at same rate, from January 1, 1894, to July 1, 1902, 8 years and 6 months........... 7,650 00

                          $27,831 50

70 hydrants, at $40 each per annum, from August 4, 1893, to July 1, 1902, 8 years, 10 months and 26 days ..................... 24,935 35

Total ..................... $52,766 85

And the account would appear to stand upon July 1, 1902, as follows:

Total amount paid to the company as per contracts................ $53,629 91

Total amount earned by the company, as per contracts.......... 52,766 85

Amount overpaid ...........$ 863 06

Upon the other hand, the city treasurer testifies that, according to his books, the amount due to the company is subject to de-

ductions, for failure of the light service, amounting, in the aggregate, to $835.86, whilst the account upon which the company sues, and which its bookkeeper testifies is correct according to the books of the company, charges the city with 42 lights in 1896 and 1897, with 40 in 1898, with 39 in 1899, 1900, and 1901, and with 76 hydrants during those several years.

It is shown that the special tax of 3½ mills referred to in Ordinances 703 and 711 was assessed for the years from 1892 to 1901, inclusive, and that the whole of it, so far as collected, has been turned over to the company, with the exception of the $1,684.95, for which plaintiff has obtained judgment in this suit.

### Opinion.

It has more than once been held by this court that contracts such as that here sued on, whereby municipal corporations undertake to make provision in advance for such prime necessities as light and water, and incur obligations therefor, to be met from time to time, as those necessities are furnished, from current revenues, do not fall within the restrictive operation of Rev. St. 1876, § 2448, which prohibits such corporations from contracting debts without providing, in the ordinances by which they are contracted, for their payment. Laycock v. City of Baton Rouge, 35 La. Ann. 479; State ex rel. Marchand et al. v. New Orleans, 37 La. Ann. 21; N. O. Gas Light Co. v. City of New Orleans et al., 42 La. Ann. 189, 7 South. 559; Receiver v. City, 49 La. Ann. 833, 21 South. 870; State ex rel. Ferguson v. Mayor, 49 La. Ann. 1769, 22 South. 756; Ice, Light & Water Works Co. v. City of Lake Charles, 106 La. 67, 30 South. 289.

The charter of the city of Monroe has not been offered in evidence, nor has it been referred to by the counsel upon either side, but, so far as we are advised, there is no special statutory limitation upon the power of that municipality with respect to the making of contracts for light and water, and no reason suggests itself why, as a matter of corporate authority, the contracts here sued on would not have been equally valid if the provision for the special tax had been omitted. It is, however, manifest that that provision was inserted in the interest of the

contracting company, and it is equally manifest that it was never intended that the absolute obligation assumed by the city to pay a specified amount, each, for a specified number of lights and hydrants, during a specified time, should be considered as discharged by the turning over to the contractor of the proceeds of a tax, uncertain in amount, and to be levied during about one-third of the period for which the contracts are to run. It seems not unlikely that it was within the contemplation of the parties that the city, at the expiration of 10 years, would avail itself of the option, accorded by the contracts, to purchase the plant which the company was to establish, and, in view of that contingency, that the company was satisfied to have the payments to become due it secured during that period of time by the special tax. That it failed to require security for the remainder of the term during which its contracts run may have been improvident, but the obligation of the city to take and to pay for lights and hydrants according to those contracts is not discharged merely because its fulfillment is not secured.

In fact, by referring to the language of section 4 of Ordinance 703, it will be seen that the city agrees to levy and collect the special tax, "or as much thereof as may be necessary," in order to enable it to pay for the lights and hydrants specified in section 3 of the ordinance, and yet we find that by Ordinance 746 it contracts for 10 additional lights, which it agrees to use and pay for during the unexpired term of the contract, and as to which the contractor was never secured by the special tax or otherwise. It is evident, also, from the language quoted, and from other language used in the different ordinances relating to the subject, that the city was under no obligation to turn over to the company any more of the tax collected than was necessary to pay for the lights and hydrants furnished according to the contracts and at the contract price, so that the tax may be regarded merely as security to the company, and as a resource to the city, which affected the contracts between them in so far as it was available or necessary for their purposes, and no farther. During the life of the tax, the company had the right to require that it should be used to the extent necessary to make the city's semiannual pay-

ment for lights and hydrants as provided by its contracts, and the city was obliged to use it in that way. But, since the period for which it was voted has expired (save as to such balance as may be on hand, or as may be collected from delinquents), the city and the company are relegated to some other source from which to make and to receive such payments.

There is a suggestion on behalf of the plaintiff to the effect that the levy of the tax for the year 1892 was premature, that it was first properly levied for the year 1893, and hence that, in order to have completed the 10 years for which it was voted, it should have been levied for 1902. We are unable to concur in this view. The tax was voted for 10 years, and has been collected for 10 years, i. e., for the years from 1892 to 1901, inclusive, and the company has received all that has been collected, save the amount for which its receiver has obtained judgment in the district court. It is therefore in no position to object to the levy for any particular year as premature or irregular.

Our learned Brother of the district court has proceeded upon the theory, as we understand his judgment, that the plaintiff's right of recovery for light and water furnished during the 10 years from the respective dates at which the electric light and water plants were put in operation is dependent upon and measured by the amount collected as the proceeds of the special tax, and he has given judgment, as we have seen, in favor of the plaintiff, for $1,684.95, as the balance of said tax, collected by the city and not paid to the company, decreeing, at the same time, that the plaintiff should furnish light and water without further compensation (other than from so much of the special tax as may hereafter be collected from delinquents) until February 2 and August 4, 1903, respectively.

Holding, as we do, that the city is bound to pay for the lights and hydrants furnished according to the terms of the contracts sued on, and that the special tax merely afforded, and affords, in part, the means to that end, it follows that our judgment must rest upon a different basis. The franchises conferred upon the company by the city run for 30 years from February 22, 1892 (the date of the adoption of Ordinance 703), and the city's contracts for lights and hydrants, beginning

somewhat later, expire only with those franchises, and are not affected by the expiration of the period for which the special tax was voted. Nor is the right of the plaintiff to recover for light or water furnished, or to be furnished, dependent upon the amount which the city may have collected, or may hereafter realize, from the special tax. Considering the purpose for which it was voted, that tax ought to be applied exclusively to the contracts sued on, but, to the extent that it is inadequate for that purpose, the city's obligations under those contracts must be met in some other way.

There is no satisfactory evidence in the record before us that the company has supplied any more lights or hydrants than are called for by the ordinances to which we have referred, or that the city is entitled to the deductions claimed by it for failure of service. Taking the record as we find it, it appears that the company is under contract to furnish the city with 35 arc lights at $90 per annum each, and with 70 hydrants at $40 per annum each, and that the total amount to which it becomes entitled upon the rendition of the service is $5,950 per annum, or $2,975 semiannually. It also appears that upon July 1, 1902, it was overpaid by $863.06, for which amount, as also for the amount of the judgment rendered by the district court (when paid), the city will be entitled to be credited upon the plaintiff's account against it for lights and hydrants furnished since the date last above mentioned.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, in so far as it holds the defendant entitled to receive from the Monroe Waterworks & Light Company existing light service until February 2, 1903, and existing hydrant and water service until August 4, 1903, without any further payment therefor except the amount awarded by said judgment, and in so far as the nullity of the contracts sued on is reserved; and it is now adjudged and decreed that the said contracts be held to be valid and subsisting obligations for the full terms specified therein, to wit, until the expiration of the period for which, under Ordinance 703, the company of which the plaintiff is receiver holds the franchise to use the streets and

alleys of the city of Monroe for the purposes of its light and water plants.

It is further adjudged and decreed that said judgment be affirmed in so far as it awards the plaintiff the sum of $1,684.95, and that it be annulled in so far as it allows interest thereon from May 1, 1901, and in so far as it rejects the balance of plaintiff's. demands against the city. And it is further adjudged and decreed that the plaintiff's account for light and water furnished to the defendant since July 1, 1902, be credited with the sum of $863.06, as an amount overpaid up to that date; that the sum of $1,-684.95, for which he now obtains judgment, be credited, when paid, upon the same account; and that the right be reserved to the plaintiff to recover whatever balances may be or may become due on said account in accordance with the terms of the contracts here sued on, with interest on such balances from the dates at which they have fallen or may fall due.

It is further adjudged and decreed that, with respect to the compensation claimed by the plaintiff for lights in excess of the 35 arc lights and hydrants in excess of the 70 hydrants here shown to have been contracted for and furnished, and with respect to the deductions claimed by the city for failure in light service, the rights of the parties be reserved. It is further adjudged and decreed that the defendant pay all costs.