*304 Statement of the Case.
MONROE, J.
The object of this proceeding is (by mandamus) to compel the judge of the district court for the parish of Iberville to grant a suspensive appeal from an order dissolving, on bond, an injunction which he had issued.-
The allegations of the petition filed by the relators are substantially as follows, to wit:
That they obtained an injunction restraining the police jury from executing a contract entered into June 14, 1905, for the building of a courthouse, from changing the site of the courthouse, and from issuing certificates of indebtedness, and restraining Jacob McWilliams from disposing of the present courthouse, or ground, pretended to have been purchased by him from the police jury; that, after trial of a rule nisi, taken by defendants, the judge of the district court ordered said writ to be dissolved on bond; and that relators applied for a suspensive appeal, which was denied.
Relators further allege (in their petition to this court, and their petition for the injunction, made part of the same) that they are residents and taxpayers of the parish of Iberville, that on February 23, 1905, the police jury adopted an ordinance providing for the building of a new courthouse, on the site of the present courthouse, at a cost of $35,000, payable in .annual installments of - years, in scrip bearing interest at 5 per cent., out of the surplus from the 10-mill tax levied for current expenses; that a committee was appointed upon plans and specifications, which reported that it had selected a plan for a building to cost $37,000; that thereafter another committee was appointed to confer with the banks about floating the scrip, which committee reported that it had accepted a bid of $39,500 for the construction of the courthouse; that the report was approved, and said committee was again instructed to confer with the banks and to select a suitable location for said building in the town of Plaquemine, and said committee recommended the purchase of a lot belonging to Jacob McWilliams, which recommendation was also approved; that the police jury thereupon entered into a contract with John Arthur, whereby the latter agreed to build a courthouse on the site so selected for $39,-500, payable, cash, in monthly installments, as the work should progress, upon certificates of the agent of said police jury; and that thereafter the president of the police jury purchased the lot from McWilliams for $8,000, of which $5,000 was to be paid in cash and for the balance he undertook to convey to the said McWilliams the present courthouse, together with the lower part of the lot upon which it is situated. Relators further allege that the present site is a suitable and safe one for a courthouse; that the original ordinance, providing that the new courthouse should be erected there, has never been formally rescinded; that a new jail, costing $10,000, was erected on said site in 1893; and that to change the site of the courthouse would cause great inconvenience and ultimately necessitate the erection of a new jail, and the misappropriation of the funds of the parish. They further 'allege that the police jury was called together by the mayor in special meeting for the purpose of receiving a report recommending a change of site and the purchase of other ground, and that said special meeting was illegal; that the present site was established in the town of Plaquemine in 1847; that the town did not then include within its limits the new site so selected, and that the site cannot be so changed, save by a special election and a two-thirds vote; that the conveyance to McWilliams of the present courthouse and adjacent ground is unlawful, the police jury being without authority to barter or sell public property; and that the purchase from McWilliams was unlawful, because there were no funds in the parish treasury, or to accrue, which could or can be used to *305 make the cash payment required, the whole of the revenue having been appropriated and being needed for current expenses. They further allege that the building contract and the ordinance authorizing the same are void because no provision is made in said ordinance for the payment of the debt to be thereby incurred; that they believe that the proposed courthouse will cost $50,000, and that the police jury intends to issue certificates, bearing interest, without regard to work done at the price fixed by the contract, and without providing for extra cost over the contract price; that irreparable injury will be done to the public by the execution of said contract; and that an injunction should issue to prohibit the same and to prohibit further action under the contract with McWilliams.
They further allege that the injunction, as issued, restrained the taking possession by an alleged purchaser of public property, that the same cannot legally be bonded, and that the order to bond, if allowed to be executed, will work an irreparable injury to them and to the people of the parish. Wherefore they pray for writs of certiorari, mandamus, and prohibition, etc.
The judge of the district court, made respondent, for return and answer produces the record and says: That the order authorizing the bonding of the injunction is so framed as to leave intact that part of the restraining order which prohibits McWilliams .from disposing of the old courthouse and ground and from receiving any revenue therefrom. That with respect to the assertion that the police jury cannot build the new courthouse, because that body has no legal title to the new site (the exchange of the old site therefor being, as it is said, illegal), the defendants have made the following admission, to wit: “It may be judicially admitted, however, that, in the event the court holds a different view of this legal proposition (i. e., that the exchange of the old site was valid), all parties defendant shall consent to a retrocession of the old courthouse and site to the police jury, without affecting the sale or purchase of the new site or interfering with the erection at once of the proposed much-needed new courthouse.” That, whilst the argument was presented that the proposed disposition of the old courthouse was a continuous dedication to the same use, respondent did not feel called upon to decide upon the validity of the transfer, and reserved the' question for the merits by maintaining the injunction with respect thereto.
Respondent further shows that the police jury of the parish undertook to build a new courthouse; that the old courthouse is within 300 feet of the levee, opposite a caving bank, and would be outside of the levee, as projected several years ago by.the state engineers, were it not that citizens by private subscription built the levee nearer to the river, and that the only hope of safety for the present site lies in the fact that the government of the United States is now building locks at the mouth of Bayou Plaque-mine; that the government must protect the bank in order to protect the locks, but that this involves both the question of ability to accomplish, and the question of the will (on the part of Congress) to make annual appropriations for, that purpose; that the police jury concluded that the present site was unsafe, and, being unable to find a suitable one within the limits of the town of Plaquemine, as incorporated in 183S, found one in the center of the town, as now incorporated, and just beyond the limits as defined by the act of incorporation of 1838; and that it is a notorious fact, of which respondent takes cognizance, that property near the present site has depreciated very much in value, and much of it has been abandoned because of its proximity to the river.
Respondent further shows that relators have set up no particulars of the prospective *306 injury which they allege, and that in a somewhat similar case it was held by this court that a bond would protect the parties complaining (Lattier et al. v. Abney et al., 43 La. Ann. 1018, 10 South. 360 that the decision of the police jury upor ¡he subject of the necessity for a courthouse and its site is final (Rev. St. § 2746); that the president of the police jury was authorized to convene it in special session, but, if not, that it had the right to assemble when it saw fit (Rev. St. § 2731); that there is nothing in the acts of 1847 or in any other acts, from 1838 to 1857, designating Plaquemine as the parish seat; that, prior to 1838, the courthouse was removed from the Second ward of the parish to the Third ward, which latter comprises the territory occupied by the town under the incorporation of 1878; that pursuant to what authority this change was made respondent is not informed, but that the removal could not have been to the “town,” since it was made before the town was incorporated; that, in any event, the same authority which incorporated the town in 1838 reincorporated it in 1878, and, if the town be the parish seat, then the police jury may build the courthouse in any part of the town. Respondent further shows that, under Rev. St. §§ 2448, 2449, and Act No. 32, p. 39, of 1902, police juries are authorized to make contracts for works of permanent public improvement against the surplus of future revenues (over and above the amount necessary for current expenses), and to issue certificates of indebtedness therefor, not to run beyond 10 years nor to bear interest in excess of 5 per cent., the ordinance to provide for-the payment of the principal and interest of the debt so contracted and to remain in force until same are paid, and that the fact that the hanks have, in the present case, agreed to buy the certificates from the contractor for cash does not invalidate the ordinance (referring to Railroad Co. v. Police Jury, 48 La. Ann. 331, 19 South. 282); that by a subsequent ordinance the police jury fixed the amount of the surplus dedicated to the building of the courthouse at two mills of the present tax (referring to Oubre v. Donaldsonville, 33 La. Ann. 386; Bank v. Town of Jennings, 107 La. 547, 32 South. 66; Blanks v. City of Monroe, 110 La. 944, 34 South. 921); that the assertion that the police jury intends to issue certificates without regard to work done, and that the courthouse will call for $50,000, is contradicted by the contract, .in which the intention of the police jury is expressed.
“Briefly stated,” says our learned Brother, “the police jury has dedicated 2 mills of the 10 mills parish tax for the erection of a new courthouse. The period of time for which this is to run cannot be over 10 years, under Act No. 32, p. 39, of 1902, and must run, within 10 years, until the debt and interest are paid, under Rev. St. § 2449. The ordinance and contract provide for a building committee to take up the work of the contractor as he accomplishes it and issue the parish certificates of indebtedness to cover the same. It is therefore perfectly plain that the building committee will be guided by the fact that 2 mills of the parish tax have been dedicated for this purpose, and that they must issue the certificates of indebtedness within those 2 mills for each year, and must further observe the time limit of 10 years in their issuance and other provisions of the law; otherwise, the certificates would be invalid. In the latter event, the plaintiffs can suffer no injury, and the contractor will be the only party with cause for complaint.”
Opinion.
We are of opinion that the return of the respondent judge eliminates the question of the legality of the alienation of the old courthouse property from present consideration. The allegations of the petition, charging, in effect, that the police jury, in un *307 dertaking to build a new courthouse upon a new site, is acting unwisely, in view of the alleged suitableness of the present site and the probability that such action will involve hereafter the building of a new jail, present nothing upon which this court can act, since the wisdom or unwisdom of the police jury in such matters is not subject to judicial control. Rev. St. § 2746; Act No. 32, p. 39, of 1902; Taxpayers v. Sewerage Co., 108 La. 583, 32 South. 563. The contention that the original action of the police jury, approving a report recommending the building of the new courthouse on the old site, should have been formally or categorically reconsidered, and that the meeting at which the later action was taken was illegal, because convened at the instance of the mayor, are without merit and are not insisted upon in this court. Rev. St. § 2731.
If it be true that the present courthouse was established in the “town of Plaque-mine,” whether in 1847 or at any other time, the fact that the new courthouse is to be built nearer the present center of that town is an answer to the objection that the courthouse is to be removed from the seat of government, in contravention of any law to which we have been referred. The only serious question which the ease presents is whether sufficient provision has been made for the payment of the debt which the police jury proposes to contract.
It appears, from the allegations of the petition, that upon February 23, 1905, the police jury adopted an ordinance, reading:
“Be it resolved and ordained that a courthouse be built on the site of the present courthouse, to cost the sum of $30,000 or $35,000, to be paid for on the terms and in the manner hereinafter provided.
“Be it resolved that the said sum is to be paid in annual installments of-years, to be evidenced by scrip bearing 5 per cent, interest and payable out of the surplus fund or excess of the remainder, over and above the annual expenditures, from the ten mills tax annually levied by the parish for current expenses.”
It further appears that, pursuant to the purpose of this ordinance, a committee of four members was appointed by the police jury to determine upon a plan and specifications for the proposed building, and the petition alleges “that on March 6, 1905, the committee reported to the police jury that it had selected a plan submitted by Andrew ,T. Bryan for a courthouse, to cost $37,000.” The petition does not, however, allege the fact (which appears from the extract from the minutes of the police jury annexed to and made part of the return of the respondent judge) that the report of the committee concluded as follows, to wit: “And to defray the cost of erecting said building we suggest that two mills from the regular parish tax be set aside to meet said expense.” Nor does the petition allege that the entire report, as presented, was adopted by the police jury. .
Thereafter, the petition alleges, “on May 11, 1905, the police jury authorized said committee to confer with the banks in the town of Plaquemine in regard to floating the parish scrip to be issued for building said courthouse,” and “on the 14th day of June, 1905, said committee reported * * * that it had opened bids for the erection of a courthouse, and had accepted the bid of John Arthur, for $39,500, which was approved by said body, and said committee was again instructed to make the necessary arrangements with the bank * * * to furnish the funds to build said courthouse and to select a suitable' site in the town of Plaquemine for said building; and that, on the 23d day of June, 1905, said committee recommended the purchase of a lot, the property of Jacob McWilliams, and authorized the president of the police jury to buy the same.” The petition further alleges that the police jury entered into a contract with Arthur for the building of the courthouse, and that the president of the body en *308 tered into a contract with McWilliams for the acquisition of his property.
It is not a fact, therefore, as alleged, that there is no ordinance providing for the payment of the debt -which the police jury is about to contract, since there is an ordinance dedicating- two mills of the authorized parish tax for that purpose. Now, it is true that the ordinance does not specify how many years taxes are thus dedicated; but section 2449, Rev. St., reads: “The ordinance or enactment providing for the payment of the principal and interest of any debt created by any board of police or authorities of any incorporated town shall remain in force until the debt and interest is paid” — which law is modified by Act No. 32, p. 39, of 1902, to the extent, and to the extent only, as we think, that such an ordinance or enactment as that mentioned can remain in force, if necessary, for 10 years from the date of the contract to which it relates, and no longer. It is also true that the dedication in question was part of the action adopting an estimate of $37,000 as the cost of the building, and that such action was taken at a time when the previous action declaring the purpose to build upon the old site had not been rescinded. The amount reported by the committee was, however, merely the approximative estimate of the architect, and the fact that the police jury, having adopted it as an estimate, subsequently contracted with the builder (upon the basis of the architect’s plans, which had also been approved) at a somewhat higher figure, does not justify the assumption that it was thereby intended to rescind the tax dedication, without which no building could be erected. Nor was the dedication affected by the fact that the police jury subsequently determined to build the courthouse upon a new, instead of upon the old, site, since it was equally as necessary and as applicable in the one case as in the other. We are inclined to think that it would have been better, in some respects, if the building contract had been specifically identified with the tax thus dedicated to its execution. As the matter stands, we take it, from the allegations of the petition and the answer of the judge, considered together, that the committee, which was authorized by the police jury “to confer with the banks * * * in regard to floating the parish scrip to be issued for building said courthouse,” and “to make the necessary arrangement * * * with the banks to furnish the funds to build said courthouse,” was successful in its mission, and that the banks, upon the delivery to them of the certificates, are to furnish the cash with which the builder is to be paid, according to his contract; and, for the purposes of the question here at issue, we are not prepared to hold that such provision for the debt to be contracted is inadequate under the law.
Upon the whole we fail to find that the injury with which the relators are threatened is irreparable.
It is therefore ordered, adjudged, and decreed that the restraining order herein issued be now rescinded, and that the relators’ application be rejected, at their cost