LAND, J.
This ease has heretofore been before us on an application for a mandamus to compel the district judge'to grant a suspensive appeal from an order dissolving on bond the injunction sued out by plaintiffs. This application was refused. See 115 La. 579, 39 South. 627.
The allegations of the petition are so fully stated in the opinion of the court in that ease that repetition is unnecessary. All of the issues, save one, now before the court, were presented and fully considered on the application for a mandamus.
On the final trial there was judgment in favor of the defendants, and plaintiffs have appealed.
The question before the court in the mandamus suit, it is true, was whether the dissolution of the injunction on bond would work irreparable injury to the xilaintiff; but the solution of that question depended on the relief that plaintiffs were entitled to on the record presented to the court.
The court reached the following conclusions, as expressed in the syllabus prepared by the justice who handed down the opinion:
“(1) Whether a police jury, in undertaking to build a new courthouse upon a new site at the parish seat, is acting wisely or unwisely, in view of the alleged suitableness of the old site and the alleged probability that such action will at some future time involve the building of a new jail, is a question which presents nothing upon which this court can act, since the discretion vested in the police jury in such matters is not subject to judicial control.
“(2) An ordinance declaring that a courthouse shall be built upon one lot at the parish seat, being inconsistent with a previous ordinance declaring the purpose to build on another lot, the previous ordinance is to that extent repealed by implication.
“(3) A police jury may meet in special session, when it is deemed necessary, upon the call of the president or otherwise; notice of such meeting being given to the members.
“(4) If a courthouse is established in a town, the corporate limits of which are enlarged, a change in the location of the building to the center of the town as enlarged is not a removal of the courthouse, such as to require a special election to be held.
“(5) A dedication by ordinance of a police jury of two mills of the estimated surplus of the parish tax, without specification of the number of years for which the tax is dedicated, is controlled by Rev. St. § 2449, and Act No. 32, p. 39, o'f 1902, to the extent that it must *786 ■continue for ten years, if necessary for the payment of the debt to which it is dedicated, ■and cannot continue beyond that time.
“(6) Where a police jury undertakes a work ■of public improvement, such as the building of a courthouse, for which it is necessary to incur a debt payable from the estimated surplus of the parish revenues, the contract therefor may be made on the basis of cash realized -or to be realized from certificates of parish indebtedness, to the payment of which the surplus is dedicated.”
The court found that the only serious ■question presented was whether sufficient provision had been made for the payment of the debt which the police jury proposed to ■contract, and on the record before it decided that question in the affirmative. We see no good reason to change our views.
The police jury had the power under Act No. 32, p. 39, of 1902, to make agreements or contracts dedicating the excess of annual revenues of subsequent years and to issue interest-bearing certificates for the purpose of defraying the costs of public improvements.
Two mills from the regular parish tax of ten mills was set aside for that purpose.
This tax was levied for the year 1905, and its proceeds estimated on the budget at $6,000. This annual surplus was sufficient to pay the cost of constructing the new courthouse well within the limit prescribed by the act of 1902. It is objected that the contract price exceeded the amount of $37,000, authorized by the resolution.
But the police jury formally approved the action of its building committee in accepting the bid for $39,500. Therefore at the time the contract was entered into the police jury had dedicated the excess of annual revenues of subsequent years to pay the full contract price.
It is further argued that the contract provided for cash payments, while the statute contemplates that payments should be made futuro.
If, as indicated by the evidence, the police jury made arrangements with local banks to take the certificates at their face value, thus enabling the police jury to make a contract on a cash basis, we see no grounds for complaint on the part of taxpayers, as it is not shown that they suffered any injury from the transaction.
The only remaining contention is as to the sale or exchange by the police jury of the old courthouse site and the purchase of another site for the erection of a new courthouse. We agree with the district judge that the right of the police jury to make such a purchase is not a debatable question, since it necessarily follows from the mandate of the law requiring them to provide a good and sufficient courthouse for the parish.
The wisdom or expediency of abandoning an old courthouse building is a matter of discretion, vested in the police jury, over which we have no control. But the right of the police jury to dispose of the old courthouse site and building is a different question. It appears from the evidence that the police jury purchased the new site for the price of $8,000, of which $5,000 was paid in cash and $3,000 by' a transfer of the old site to the vendor.
In Parish v. Gaddis et al., 34 La. Ann. 929, this court held that property donated to a parish in fee simple for its use and benefit, and upon which a courthouse was built and used, cannot legally be sold under a police jury ordinance, although, the parish seat being changed, the building was abandoned an'd threatened to go to ruin. In that case the court in a well-considered opinion pointed out the difference between parochial and municipal corporations as to their powers and functions.
The court said that parishes possessed no other powers than those delegated, “ranking low in the scale of corporate existence,” and “as a rule cannot acquire real estate, unless for public utility, and cannot dispose of same, after it has been acquired and devoted *788 to public service, without legislative authority” ; citing Dillon (3d Ed.) vol. 1, p. 25.
The difference between that case and the one at bar is very slight. In one the property was acquired by the parish by donation “in fee simple for its use and benefit,” and in the other the ^property was acquired by purchase as the site for a courthouse.
In both cases, the property was acquired for the benefit of the public, and particularly for the benefit of the people of. the local community.
In one case the property was sold, and in the other exchanged or given in payment. There is no difference in principle between a sale and an exchange, quoad the power to alienate. Our statutes confer on police juries no express authority to acquire or sell real estate.
The authority to purchase is implied when it is necessary to enable the police jury to discharge the duties imposed on it, as in cases of the construction of courthouses, jails, and the like.
It has been held that a police jury may purchase the property of a delinquent tax collector sold under execution to pay a debt due the parish; this power being implied from the power to sue, recover judgment, and issue execution in such cases. Parish of Concordia v. Bertron, 46 La. Ann. 356, 15 South. 60.
We have been referred to no case in which it has been held that the police jury has the right, without special legislative sanction, to sell real estate acquired for a public purpose.
The sale of a courthouse site and building thereon is a matter which concerns the people of the parish, and we' are not prepared to hold that a police jury has the authority to sell such property without legislative authority, either general or special.
Our amendment of the judgment will leave the defendants at liberty to carry out their judicially admitted agreement for a retrocession of the old courthouse and site-to the police jury without affecting the purchase of the new site, and will not interfere with the construction of the new courthouse under the contract in question.
It is therefore ordered, adjudged, and decreed that the transfer from the police jury to Jacob McWilliams of the lot of ground on< Main street in the town of Plaquemine on which the old courthouse of the parish stands, as per deed of date June 23, 1905,. before Joseph A. Grace, clerk of court and ex officio notary public, be annulled and. canceled, and that said property be declared to belong to the parish of Iberville; and it is further ordered and decreed that the injunction sued out against said Jacob McWilliams, restraining him from selling or disposing of said courthouse and grounds, be-perpetuated; and it is further ordered and decreed that the said judgment be annulled, avoided, and reversed in so far as it dissolved the said injunction in its entirety and condemned plaintiffs to pay damages and costs-; and it is further ordered and decreed that defendants pay all costs of suit in thedistriet court, and that, as thus reversed in part and amended, the judgment appealed from be affirmed—appellees to pay costs of appeal.