No. 901

First Circuit

## PRESLEY v. VERNON PARISH SCHOOL BOARD

(February 8, 1932. Opinion and Decree.)
(March 8, 1932. Rehearing Refused.)

Pujo, Bell & Hardin, of Lake Charles, attorneys for plaintiff, appellant.

A. B. Cavanaugh and P. L. Ferguson, of Leesville, attorneys for defendants, appellees.

ELLIOTT, J. Vernon parish school board acquired and owns, for school purposes a tract of land containing about 4 acres, less a strip on one side used for a public road. There stands on the ground, erected for school purposes, a two-story brick building known as Evans High School, in which is conducted said high school. The ground surrounding the building is used by the pupils as a playground.

On or about September 12, 1930, by ordinance duly adopted, the school board authorized R. L. Morgan, its president, to lease to T. W. Simmons a part of said school ground, in area 75 feet east and west by 100 feet north and south, situated in the northwest corner of said ground,

for a period of ten years. Mr. Morgan, acting for the school board, executed the lease in favor of Simmons on September 12, 1930, leasing him the property in question for ten years; the consideration of the lease being a rental of $10 per year.

T. W. Simmons was about to commence the erection of a building on the leased land, but was stopped by an injunction instituted against him and the school board by Elias Franklin Presley, who alleged that the building about to be erected was for mercantile purposes and that the school board had no power nor authority to lease the school property for such a business while it was being used for school purposes.

That the ordinance and the act of lease was ultra vires, null, and void, without any effect, and therefore vested no right to said property in said Simmons.

An exception of no right or cause of action was filed by the defendants, but by the consent of the parties it was referred to the merits and became part of the answer.

The Vernon parish school board and T. W. Simmons appeared and for answer admitted the passage of the ordinance, admitted the execution of the lease, and that a building was about to be erected by Simmons, but alleged that it was not for mercantile purposes, but for the conducting therein of a cafeteria for the special benefit of the pupils and teachers of said school. That the cafeteria was to be run in connection with and for the convenience of said school, under the supervision of the school board. That the cafeteria service looked to the health and convenience of the pupils and teachers; that a lease for such a purpose did not violate the law.

There was judgment dissolving the injunction and rejecting plaintiff's demand. Plaintiff has appealed.

The school board and Simmons have not supported the lease by a brief; but the averments contained in their answer and the evidence introduced on the trial show the character of the defense.

The plaintiff contends that the school board has no power nor authority under the law to lease ground acquired for school purposes and on which a school building has been erected and in which a public school is being conducted.

The plaintiff objected to the admissibility of evidence for the purpose of showing that the object of the lease was the erection and operation of a cafeteria, as set forth in the answer of the defendants, no restriction of the kind having been stipulated in the ordinance and lease, but the court overruled the objection and heard the evidence on the subject.

In plaintiff's brief it is not urged that the ruling was erroneous, and we are not requested to review it. We therefore do not consider the ruling, and act on the evidence, as was done in the lower court.

The power and authority of the school board to have opened and conducted a cafeteria on the school ground for the service and convenience of the pupils and teachers is not the question involved in the present case. The question is, whether the school board had the authority to lease the school property and divest themselves of control thereover, as was done.

Mr. Morgan, president of the school board, testified that it was not the intention of the school board to give Mr. Simmons an open lease to put up anything he

wanted to on the property, and that he was to be restricted to a cafeteria.

"Q. Mr. Morgan, at the time the school board let this lease to Mr. Simmons, was there any understanding between the school board and Simmons as to what the property was to be used for?
"A. No, it was generally understood that it was to be used for cafeteria purposes.
"Q. Did he state to you and to the board at the time the lease was granted, what he wanted it for, why he wanted the lease?
"A. Cafeteria purposes."

Mr. J. J. McCann, member of the school board, testified that the operation of a cafeteria was the object of the lease, but does not claim that it was more than an understanding, which all understood. Mr. Stanley, parish superintendent, says the same. He stated that there were several cafeterias in the public schools, to his knowledge. He was, however, asked:

"Q. They are not run under the supervision of the schools or of the persons who have charge of the schools?
"A. Yes, they are inspected by the health inspector, same as any part of the school."
Mr. Simmons testifies:
"Q. At the time that you secured the lease from the School Board, did you state to the School Board what you wanted the lease for?
"A. No, sir.
"Q. At the time you secured the lease you did not tell them what you wanted with the lease?
"A. Yes, I told them what I wanted it for."

He subsequently stated that he had no intention of running anything there but a sanitary cafeteria; that he expected to sell lunches, coffee, cold drinks, school supplies, drawing paper, notebook paper, and so on; but he does not allege in his answer nor say in his testimony that he would not sell anything else and does not commit himself to doing business with the teachers and pupils of the Evans High School only. It is a proper conclusion from the lease, answer, and his evidence on the subject that he does not promise to limit his business to pupils and teachers, nor his sales to the articles stated in his testimony, but may sell other articles to anybody, at any hour of the day.

Though defendants aver in their answer and testify generally that the purpose of the lease was to have opened and conducted a cafeteria on the school ground for the service and convenience of the pupils and teachers, the lease does not say that such is its purpose, and there is no direct averment of error in the language of the lease and no prayer that it be reformed, consequently it may be assumed, notwithstanding the understanding of the parties, that the lease as written, sets forth the contract entered into.

The Constitution of 1921, art. 12, sec. 10, requires the Legislature to provide for the creation and election of parish school boards, etc. Article 4, sec. 12, provides:

"The funds, credit, property or things of value of the State or of any political corporation thereof, shall not be loaned, pledged or granted to or for any person or persons, association or corporation, public or private," etc.

Act No. 100 of 1922, sec. 20 (amended by Act No. 110 of 1928) provides:

"The school board may receive land by purchase or donation for the purpose of erecting school houses, provide for and secure the erection of same, construct such out-buildings and enclosures as shall be conducive to the protection of property, and make repairs and provide for the necessary furniture, equipment, and apparatus * * *; they may change the location of a school house, sell or dispose of the old site, and use the proceeds thereof procuring a new one. * * *"

School boards are by the act made political corporations and agencies of the state, in the matter of public schools.

We excerpt from Dillon on Municipal Corporations as follows:

"The school district * * * is usually invested by general enactments operating throughout the state with a corporate character, the better to perform within and for the locality its special function, which is indicated by its name. It is but an instrumentality of the state and the state incorporates it that it may the more effectually discharge its appointed duty. * * * They are purely auxiliaries of the state and to the general statutes of the state they owe their creation and the statutes confer upon them all the powers they possess, prescribe all the duties they owe and impose all liability to which they are subject." Dillon on Municipal Corporations, vol. 1, subject, Public and Municipal Corporations, p. 44, sec. 25.

From R. C. L., vol. 24, subject Schools, p. 585, sec. 34:

"Unimproved school lands are subject to the same restrictions as school houses and the school board cannot permit them to be used for collateral purposes, even though profitable. This on the ground that school boards have power only over educational matters and have no power to lease or grant school property for other purposes."

The plaintiff cites Henderson v. City of Shreveport, 160 La. 360, 107 So. 139; Dupuy v. Police Jury, 116 La. 783, 41 So. 91; Parish of West Carroll v. Gaddis, 34 La. Ann. 928. These cases have bearing on the question of the powers of political corporations created by the Legislature, made agencies of the state and invested with certain enumerated powers. The question involved in the present case is whether or not the Vernon parish school board had authority under the law, by means of the lease executed in favor of Simmons, to divest itself of its authority over school property, for the period of time and for the private business purposes of said Simmons. Therefore the question is not the same.

The case Isadore, Samuel & Sugar v. City of Monroe, 108 La. 677, 32 So. 961, 59 L. R. A. 723, bears directly on the questions involved in the present case. In that case the city of Monroe had acquired a lot of ground for school purposes and had erected thereon a fine school building. The grounds had been purchased and the building erected with the proceeds of a tax which the citizens had voted for school purposes and was being used at the time for school purposes, but the municipal authorities, for valuable consideration, leased a part of the building to Tom Stewart & Company to be used for theatrical purposes for the private gain of the lessee. The lease was attacked by the plaintiffs on the ground that the municipal authorities could not lease any part of the school building for theatrical purposes as a business for private gain, while it was being used for conducting a public school, even though the theatrical entertainments were not given, except when the building was not being used for school purposes. The Supreme Court held with the plaintiffs and set aside the lease. The case is in principle similar to the present. In this case Simmons proposes to enter into a private business, dealing with the pupils and teachers, but also with the public at any hour for his private gain.

The case of Ralph v. School Board, 158 La. 659, 104 So. 490, is also different from the present case. In that case it does not appear that the property had been leased. Then again, it appears from the opinion that the school board merely permitted Elizabeth and Mary Barback, without any payment to the school board, to

sell luncheons and comestibles to the pupils and teachers at or in the school during lunch hours only and "at a small profit to themselves; this and no more." The language used justifies the further conclusion that the business conducted by Elizabeth and Mary Barback was under a mere permission granted by the school board and looked after by its hygienic department. In the present case Simmons need not submit to any supervision on the part of the school board. His lease shows that they have divested themselves of all power, authority, and control over the ground leased for ten years, and the business he may do in his own building will be as free from their control as the ground leased.

The school board cannot resume their authority, if the lease stands, until the expiration of ten years; that is, if the lessee complies with the stipulations of the lease. During this period of time the school board guarantees to Simmons the peaceable and quiet possession of the ground leased, 75 feet east and west by 100 feet north and south, situated in the northwest corner of the school area.

Under the language of the Civil Code, art. 2692, it became the legal duty of a lessor to maintain the property leased in condition to serve the purpose for which it was leased and to maintain the lessee in the peaceable possession of the thing during the entire period of the lease.

It looks reasonable that while a cafeteria on the ground might be a convenience to the pupils and teachers, the business conducted by Simmons may become a nuisance, which, for the welfare of the pupils and teachers, should be suppressed. And such power must be preserved.

A school board does not have power, under the law, to lease ground acquired for school purposes, on which a school building has been erected and a public school is being therein conducted, unless as stated in 108 La. 677, 32 So. 961, 59 L. R. A. 723, it is for some casual use, not prejudicial to nor inconsistent with the main purpose for which the property was acquired. And such an exceptional situation does not exist in the present case.

If the school board can divest its authority over the school property in one case, it can do it in another, and make the term 20 instead of 10 years.

It is our conclusion that the Vernon parish school board had no power to enter into a contract with T. W. Simmons, such as was done.

For the reasons stated the judgment appealed from is erroneous and contrary to the law and the evidence and must be annulled, avoided, and set aside and the plaintiff Presley maintained in his contentions.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, reversed, and set aside. It is further ordered that the injunction issued herein at the instance of Elias Franklin Presley against the Vernon parish school board and T. W. Simmons be now reinstated and same is maintained and perpetuated.

The ordinance adopted by the school board and the so-called lease entered into between the school board and T. W. Simmons of date September 12, 1930, is decreed to be ultra vires, null, and void and without force or effect, and it is ordered that same be canceled. The said school board and the said Simmons together to pay cost in both courts.